IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

GMS Florida West Coast, Inc.

      Plaintiff,                                                    Case No:

vs.                                                                          Division:

ReliaStar Life Insurance Company,

      Defendant.

_____/

## COMPLAINT

Plaintiff, GMS Florida West Coast, Inc. ("GMS" or "Plaintiff"), a Florida corporation, by counsel, sues Defendant, ReliaStar Life Insurance Company ("ReliaStar" or "Defendant"), a Minnesota corporation, and alleges:

### GENERAL ALLEGATIONS

1. This is an action for damages that exceed $15,000, exclusive of interest, fees, and costs.

2. GMS is incorporated in the state of Florida and has its principal place of business in Tampa, Florida.

3. ReliaStar is an insurance company incorporated in Minnesota and authorized to do business in the State of Florida.

4. ReliaStar regularly conducts business within the state of Florida and insures risk located within the State of Florida.

5. On February 13, 2009, GMS submitted an application with ReliaStar for a term life insurance policy with Walter Lane, M.D. ("Dr. Lane") as the named insured and GMS as the named owner and beneficiary of the policy.

29561589 v1

6.     Dr. Lane was an employee of GMS and at the time of application was seventy-five (75) years old.

7.     On March 19, 2009, ReliaStar issued Policy Number AD20140138, a Non-Participating Indeterminate Premium Term Life Insurance Policy to Dr. Lane with GMS as the sole beneficiary and owner of the policy with a face amount of two million, forty thousand dollars ($2,040,000.00) (the "Policy"). A true and correct copy of the Policy is attached hereto as **Exhibit A.**

8.     GMS, in accordance with the terms of the Policy, paid a total of five hundred eighty-six thousand, two hundred eighty-eight dollars and eighty cents ($586,288.80) to ReliaStar between 2009 and 2014 in annual premium payments of ninety-seven thousand, seven-hundred fourteen dollars and eighty cents ($97,714.80). Accordingly, from 2009 through 2014, the Policy was in full force and effect.

9.     According to the Policy application, any Policy notices were to be sent to GMS at

**REDACTED**.

10.    The Policy provides: "Before each Policy Year begins, written notice of the premiums for that year will be sent to the Owner."

11.    GMS is the Owner and did not receive an Annual Premium Notice in 2015.

12.    In January 2016, GMS contacted ReliaStar to determine the status of the Policy. ReliaStar responded by informing GMS that the Policy lapsed.

13.    At the time of the alleged lapse, the Policy had been in force for at least one year.

14.    GMS applied for reinstatement of the Policy as allowed and prescribed within the terms of the Policy.

15.    ReliaStar, however, denied GMS's application for reinstatement.

16.    On December 7, 2016, GMS sent a demand letter to ReliaStar, demanding that it reinstate the Policy (the "Demand"). A true and correct copy is attached hereto as **Exhibit B**.

17.    On January 19, 2017, ReliaStar rejected GMS's demand and did not reinstate the Policy (the "Response Letter"). A true and correct copy of the Response Letter is attached hereto as **Exhibit C**.

18.    In its Response Letter and in support of its rejection of GMS's request for reinstatement, ReliaStar asserted that it sent the following three notices with respect to the policy: (a) Annual Premium Notice on March 6, 2015; (b) Late Payment Reminder Notice on March 27, 2014; and (c) Notice of Lapse of Insurance Coverage on May 1, 2015. *See* Exhibit C.

19. GMS, however, never received any of the above described notices.

### CAUSE OF ACTION - BREACH OF CONTRACT

20.    Plaintiff reaffirms and alleges each of the allegations as contained in paragraphs 1 - 19 of the Complaint as though fully stated herein.

21.    ReliaStar breached the explicit terms of the Policy because it did not send GMS an Annual Premium Notice in 2015, as required under the Policy.

22.    ReliaStar also breached the Policy because it did not provide a secondary notice as required per its statutory obligations pursuant to Fla. Stat. § 627.4555.

23.    Pursuant to § 627.4555, Florida Statutes:

> a contract for life insurance issued or issued for delivery in this state on or after October 1, 1997, covering a natural person 64 years of age or older, which has been in force for at least 1 year, may not be lapsed for nonpayment of premium unless, *after expiration of the grace period, <u>and at least 21 days before the effective date of any such lapse, the insurer has mailed a notification of the impending lapse</u>* in coverage to the policyowner. (emphasis added).

24.    ReliaStar failed to send a notification of impending lapse, as required by § 627.4555, Florida Statutes.

25. Even if ReliaStar sent a notice of lapse on May 1, 2015 as alleged in its Response Letter (the "Alleged Notice of Lapse"), any such notice was defective and does not comply with the secondary notice requirement set forth in § 627.4555, Florida Statutes, because:

    a. The Alleged Notice of Lapse states that the grace period ends on May 1, 2015—the very same day the notice was allegedly mailed; and

    b. The Alleged Notice of Lapse states that the lapse is effective May 1, 2015— the very same day the alleged notice was allegedly mailed. The Alleged Notice of Lapse, therefore, does not provide twenty-one days' notice before the effective date of the impending lapse in coverage as required by the statute.

26. As a direct and proximate cause of ReliaStar's breach, GMS has been damaged in an amount that exceeds $15,000.00. The exact amount of damages suffered by GMS will be proved at trial. In addition, GMS will not receive the benefit of the Policy, which has a face value of $2,040,000.00.

27. GMS has retained the undersigned attorneys, and is obligated to pay its attorneys a reasonable fee for their services, and pursuant to Fla. Stat. § 627.428, GMS is entitled to recover its reasonable attorneys' fees, costs, and expenses incurred in this action.

WHEREFORE, Plaintiff GMS respectfully demands judgment against Defendant ReliaStar for:

    (a) Compensatory Damages;

    (b) Court costs;

    (c) Pre-judgment and post-judgment interest;

    (d) Reasonable attorneys' fees; and

    (e) All other relief necessary to protect Plaintiff's rights.

## Demand for Jury Trial

Plaintiff demands a jury trial for all issues so triable.

Dated: June 13, 2017

/s/ Robert V. Williams
**Robert V. Williams**
Florida Bar No: 144720
BURR & FORMAN, LLP
201 N. Franklin Street, Suite 3200
Tampa, Florida 33601
Phone: (813) 221-2626
Facsimile: (813) 221-7335
**Primary E-Mail:** rwilliams@burr.com
**Secondary E-Mail:** pturner@burr.com

*Attorneys for Plaintiff*

# EXHIBIT

# A

# ING 

ReliaStar Life Insurance Company
ING Service Center
2000 21st Ave NW
Minot ND 58703-0890

03/19/2009

GMS Florida Westcoast Inc.
15320 Amberly Dr
Tampa FL 33647-1647

Dear GMS Florida Westcoast Inc.:

We know that choosing to purchase a life insurance product in today's ever-changing marketplace is a big decision. That's why we want to thank you and welcome you to the growing number of policyholders who have chosen the ING family of companies as their preferred life insurance provider.

ReliaStar Life Insurance Company, the issuer of your life insurance policy, is a member of the ING family of companies, a first-class global financial services organization that strives to offer a fresh financial planning perspective to its customers while forging successful lifelong relationships.

Our commitment to you does not end at the issuance of your policy. Rather, our commitment to you begins.

So, if there is anything you need, whether you want answers to specific questions or general information about your policy, call your registered representative or our Customer Contact Center at 877-882-5050, Monday - Friday 7:00am CST - 7:00pm CST.

Again, thank you for the trust and confidence you have placed in us.

Sincerely,

Donald W. Britton
President

Insurance products are issued by ReliaStar Life Insurance Company, a member of the ING family of companies.

1191/1191/23/76

| | | | |
|---|---|---|---|
| POLICY NUMBER | AD20140138 | POLICY DATE | March 26, 2009 |
| INSURED | Walter W Lane | FACE AMOUNT | 2,040,000.00 |
| ISSUE AGE | 75 Male | PREMIUM INTERVAL | Annual |
| | | PREMIUM CLASS | Standard No Tbco Rated Table 2 |
| INITIAL PREMIUM | $97,714.80 | | |
| ISSUE DATE | March 19, 2009 | EXPIRY DATE | March 26, 2039 |

### IMPORTANT - READ YOUR POLICY CAREFULLY

This is a legal contract between you and ReliaStar Life Insurance Company. This contract is called a Policy. The word "you" means the Policy Owner. The application shows the name of the Policy Owner. The word "we" means the ReliaStar Life Insurance Company. We promise to pay the Death Benefit to the Beneficiary subject to the provisions of this Policy. See "Payments By Us," for description of the Death Benefit. The Beneficiary is the party that you name. We will pay the Death Benefit when we receive proof of death of the Insured. The Policy Data Page shows the name of the Insured. Age at any time is the Issue Age shown on the Policy Data Page increased by the number of policy years completed. For information or service on this Policy, contact the person who sold you this Policy, or any of our offices including our Home Office.

### NOTICE - RIGHT TO CANCEL

**You have a right to return this Policy. Read it carefully. If you do not want this Policy, you may deliver or mail it to the person who sold it to you or to any of our offices including our Home Office. You must do this by the twentieth day after you receive this Policy. All payments made for this Policy will be returned to you within ten days after the returned Policy is received at the Home Office or Administrative Office.**

### RELIASTAR LIFE INSURANCE COMPANY
#### A Stock Company

**Home Office:**
20 Washington Ave South
PO Box 20
Minneapolis, MN 55440

**Administrative Office:**

2000 21st Ave NW
Minot, ND 58703-0890

Executed at our Home Office.

| | |
|---|---|
| Secretary | President |

### INDETERMINATE PREMIUM TERM LIFE INSURANCE POLICY TO AGE 95
### WITH EXCHANGE OPTIONS AND PREMIUM ADJUSTMENT PROVISION
### NON-PARTICIPATING

### POLICY SUMMARY

This is a Non-Participating Indeterminate Premium Term Life Insurance Policy to Age 95 with Exchange Options and a Premium Adjustment provision. The Face Amount remains unchanged as long as the Policy is in force. Premiums are payable to age 95, or until the Insured's death, whichever comes first. During the Initial Term Period, premiums are level and are based on the plan elected by you at the time of application. After the Initial Term Period, premiums may increase but will never be greater than those shown in the Schedule of Maximum Premium by Year.

## POLICY DATA

| | | | |
|---|---|---|---|
| POLICY NUMBER | AD20140138 | POLICY DATE | March 26, 2009 |
| INSURED | Walter W Lane | FACE AMOUNT | 2,040,000.00 |
| ISSUE AGE | 75  Male | PREMIUM INTERVAL | Annual |
| | | PREMIUM CLASS | Standard  No Tbco Rated Table 2 |
| INITIAL PREMIUM | $97,714.80 | | |
| ISSUE DATE | March 19, 2009 | EXPIRY DATE | March 26, 2039 |

### SCHEDULE OF FACE AMOUNT AND PREMIUM BY PLAN

| | | | ANNUAL PREMIUM | |
|---|---|---|---|---|
| PLAN | FACE AMOUNT | YEARS OF COVERAGE | POLICY YEAR 1 | YEARS PAYABLE |
| Indeterminate Premium Term Insurance to Age 95 with Exchange Options and Premium Adjustment Provision | 2,040,000.00 | 30 | $97,714.80 | See Next Page |

Initial Term Period : 10 Policy Years

### SCHEDULE OF RIDERS

Terminal Illness Accelerated Benefit Rider: The Maximum Amount Which May Be Requested Is The Lesser Of  25% Of The Eligible Death Benefit Defined In The Rider Or $250,000.  The Minimum Amount Which May Be Requested Is $5,000.

**Total Premium:**                                                                                        $97,714.80

### PREMIUM FOR POLICY YEAR 1

| PREMIUM INTERVAL | ANNUAL | SEMI-ANNUAL | QUARTERLY | MONTHLY |
|---|---|---|---|---|
| PREMIUM | $97,714.80 | $50,811.70 | $25,894.43 | $9,282.91 |

ED: Walter W Lane                                    POLICY NUMBER: AD20140138

Maximum premiums for all years shown below in the Schedule of Maximum Premium by Year. The premium actually charged may be lower but never higher than the maximum premium shown.

### SCHEDULE OF MAXIMUM PREMIUM BY YEAR

For premium intervals other than Annual, multiply your premium by the appropriate modal factor shown below:

| PREMIUM INTERVAL | MODAL FACTOR |
|---|---|
| Semi-Annual | 0.520 |
| Quarterly | 0.265 |
| Monthly | 0.095 |

| POLICY YEAR | MAXIMUM ANNUAL PREMIUM PAYABLE FOR BASIC POLICY |
|---|---|
| 1 | $97,714.80 |
| 2 | $97,714.80 |
| 3 | $97,714.80 |
| 4 | $97,714.80 |
| 5 | $97,714.80 |
| 6 | $97,714.80 |
| 7 | $97,714.80 |
| 8 | $97,714.80 |
| 9 | $97,714.80 |
| 10 | $97,714.80 |
| 11 | $1,221,754.80 |
| 12 | $1,353,171.60 |
| 13 | $1,496,665.20 |
| 14 | $1,650,481.20 |
| 15 | $1,812,763.20 |
| 16 | $1,982,062.80 |
| 17 | $2,141,325.60 |
| 18 | $2,307,320.40 |
| 19 | $2,482,434.00 |
| 20 | $2,667,400.80 |
| 21 | $65,258.40 |

MAXIMUM PREMIUMS CONTINUED ON NEXT PAGE

ED: Walter W Lane

POLICY NUMBER: AD20140138

MAXIMUM PREMIUMS CONTINUED FROM PREVIOUS PAGE

SCHEDULE OF MAXIMUM PREMIUM BY YEAR

| POLICY YEAR | MAXIMUM ANNUAL PREMIUM PAYABLE FOR BASIC POLICY |
|---|---|
| 22 | $65,258.40 |
| 23 | $65,258.40 |
| 24 | $65,258.40 |
| 25 | $65,258.40 |
| 26 | $65,258.40 |
| 27 | $65,258.40 |
| 28 | $65,258.40 |
| 29 | $65,258.40 |
| 30 | $65,258.40 |

## GENERAL PROVISIONS

THE CONTRACT: This Policy is a legal contract. This Policy, the attached application, and any attached riders, endorsements or amendments make up the whole contract. We issue this Policy in return for the written application and the payment of the initial premium. Unless there is fraud, legally the statements made by you or by the Insured are representations and not warranties. No such statements made shall be used in defense of a claim under the Policy unless it is contained in the written application and a copy of the application is attached to the Policy when issued or delivered.

Any change or waiver of the provisions of this Policy must be in writing and signed by the President, a Vice President, or the Secretary of the Company.

POLICY DATES AND ANNIVERSARIES: The Policy Date is used to calculate Premium Due Dates, Policy Anniversaries and Policy Years. The first Policy Anniversary is one year after the Policy Date. The period between the Policy Date and the first Policy Anniversary, or from one Anniversary to the next, is called a Policy Year.

OWNER: The Owner is the person named in the application who may exercise all ownership rights granted under this Policy during the lifetime of the Insured. The word "you" in this Policy refers to the Owner.

BENEFICIARY: The Beneficiary is the person or persons named in the application who have the right to the Death Benefit. When the Insured dies, we will pay the Death Benefit to the Primary Beneficiary or to the Contingent Beneficiary if no Primary Beneficiary is then living.

If there is no named Beneficiary living at the death of the Insured, we will pay the Death Benefit to you. If you are the Insured, we will pay the Death Benefit to your estate.

If a Beneficiary dies simultaneously with an Insured, or within 15 days after an Insured but before due proof of the Insured's death has been received at the Administrative Office of our Company, the Death Benefit shall be payable as if such Beneficiary had died before the Insured, unless you have directed otherwise.

You have the right to change Beneficiaries unless you have specified, in writing, that a Beneficiary is irrevocable. To change Beneficiaries, a written request satisfactory to us must be received and recorded at our Administrative Office. The request must be signed by you, and also by the Beneficiary if the Beneficiary is irrevocable. The change will then take effect as of the date on which the request was signed. This provision is subject to any payments made or other action taken by us.

CONTESTABILITY: We have a right to contest the validity of this Policy based on material misrepresentations made in the initial application for two years from the Issue Date, during which time the Insured was living. Thereafter, we may contest this Policy only if premiums due are not paid by the end of the Grace Period.

For any reinstatement, we cannot argue against its validity after such reinstatement has been in force for two years from its effective date, during which time the Insured was living. The basis for any contest after reinstatement will be limited to material misrepresentations on the application for reinstatement.

SUICIDE: If the Insured commits suicide, while sane or insane, within two years of the Issue Date, we will pay only the amount of premiums paid to us.

## GENERAL PROVISIONS (continued)

**MISSTATEMENT OF AGE OR SEX:** If the Insured's age or sex has been misstated, any amount that we will pay at any time will be the amount that the premium would have bought at the correct age and sex.

**RIGHT TO ASSIGN OR GIVE AWAY:** You may assign or give away any of your rights under this Policy unless you state otherwise in writing. To assign or give away any of your rights, we must receive written notice of it at our Administrative Office. We will not be responsible for the validity of any action or payment concerning it.

**TRUST:** We will allow a Trust to become the Owner or Beneficiary of this Policy. We will deal with the Trustee of the Trust according to the contents of this Policy without regard to any provisions, changes or amendments of any trust agreement. We shall not be responsible for any money paid to a Trust. Such payment shall fully discharge us for the amount so paid.

## POLICY PROVISIONS

**EFFECTIVE DATE OF COVERAGE:** The effective date of coverage is the earliest date on or after the Policy Date upon which all of the following conditions have been met: (1) the Policy has been delivered, (2) the initial premium has been paid while the Insured is living, and (3) there has been no change in the health of the Insured as shown in the application so as to increase the mortality class before such delivery and payment is complete.

**PAYMENT OF PREMIUMS:** Your initial premium must be paid when your Policy is delivered. All premiums after the initial premium are due and payable on or before the date they are due and must be mailed to us at our Administrative Office or paid to an authorized Agent. In order for a premium to be effective it must be received at the Administrative Office. A premium receipt signed by an officer of the Company will be furnished upon request.

You may pay your premiums once, twice, four or twelve times a year. These premiums are shown in your Policy as the annual, semi-annual, quarterly or monthly premiums. We have the right, however, not to accept a premium payment if less than $25.00.

If you decide to pay premiums once a year, your annual premium will be due on the Policy Anniversary Date of your Policy. Should you decide to pay premiums more than once a year, your semi-annual premiums will be due every six months, your quarterly premiums will be due every three months and your monthly premiums will be due every month. In each year, one of the premium due dates must fall on the Policy Anniversary Date. Except as otherwise provided in the Policy, the Policy will automatically become void if any premium is not paid when due.

**PREMIUM ADJUSTMENTS:** During the Initial Term Period shown on the Policy Data Page, premiums for this Policy are level and are based on the plan elected by you at the time of application. Premiums for Supplementary Benefits, if any, may not be level during this Initial Term Period. After the Initial Term Period, premiums may increase but will never be greater than those shown in the Schedule of Maximum Premium by Year.

Before each Policy Year begins, written notice of the premiums for that year will be sent to the Owner. Premiums may not be adjusted more than once a year. Any adjustment of premiums will be based on appropriate actuarial factors and expectations of future investment earnings, mortality, persistency and expenses. Each such adjustment will be on a uniform basis for all Insureds of the same policy age, sex and premium class whose policies have been in force the same length of time. No change in premium class will occur because of deterioration of health or change in occupation. This provision applies only to the basic Policy.

POLICY PROVISIONS (continued)

GRACE PERIOD: After the initial premium, payments must be made by the 31st day after the due date, otherwise this Policy will end. The Policy will be in force during these 31 days of grace. If the Insured dies during the Grace Period, we will deduct any unpaid premium from the Death Benefit.

REINSTATEMENT: If the premium is not paid by the end of the Grace Period, we will allow this Policy to be put back in force, subject to the following:

1. Your request in writing in advance;
2. Evidence of insurability satisfactory to us;
3. Payment of premium for the Grace Period in which the premium was in default with 6% interest compounded annually, plus the current premium due for reinstatement; and
4. Your reinstating this Policy within 3 years of the due date of the first unpaid premium.

PAYMENTS BY US: The Death Benefit will be the sum of:

1. The Face Amount then in force; plus
2. Any added benefit provided by a rider; plus
3. Any paid and unearned premium; less
4. Any premium then due and unpaid.

Unless an optional method of payment has been elected, the Death Benefit will be paid in a single sum. Any request for payment and proof of death under this Policy must be sent to our Administrative Office. When we pay the Death Benefit, we will require the return of this Policy.

The Death Benefit proceeds will include interest, at an annual rate equal to or greater than the most recently published Moody's Corporate Bond Yield Average-Monthly Average Corporate determined as of the date we receive written due proof of the Insured's death, from the date such proof of the Insured's death is received by us to the date the proceeds are paid.

NON-PARTICIPATING: This Policy is not entitled to share in surplus earnings. No dividends will be paid.

EXCHANGE OPTION PROVISIONS

While in force, this Policy may be exchanged for a new policy under one of the following options according to the requirements shown. Any riders attached to this Policy at time of exchange may be included in the new policy subject to our approval. Your written request for exchange must be made in advance. No premium payment may be outstanding.

If no option is elected, this Policy will automatically continue to provide level term coverage to age 95 with increasing premiums. The maximum premiums are the premiums shown in the Schedule of Maximum Premium by Year.

EXCHANGE OPTION A: The option to convert this Policy to a permanent policy which is acceptable to the Company at the time of conversion. Evidence of insurability is not required. Requirements are:

1. This Policy may be converted on or before the earlier of the end of the Initial Term Period specified on the Policy Data Page or the Policy Anniversary coinciding with the Insured's age 75.

**EXCHANGE OPTION PROVISIONS (continued)**

2.  The face amount of the new policy may not exceed the Face Amount of this Policy on the effective date of conversion. The effective date of conversion is the date we receive your application for conversion accompanied by the initial premium for the new policy.

3.  The face amount of the new policy may not be less than the minimum required for the plan selected. At least one plan will always be available in an amount to which this Policy may be converted.

4.  The new policy will be in the same premium class as this Policy if available at the time of conversion, otherwise, in the most comparable class available at the time of conversion. The premium will be based on rates in effect for the age, sex and premium class of the Insured at the time of conversion.

5.  The new policy will have a policy date and issue age corresponding to the effective date of conversion. The date of conversion is the date we receive your application for conversion accompanied by the initial premium for the new policy.

After this Policy has been in force for two years, the suicide and contestability periods will not start anew in any new policy which is issued pursuant to the exercising of Exchange Option A, except for either or both of the following conditions:

1.  The new policy contains new benefits not contained in this Policy; or
2.  There is an increase in the Death Benefit of the new policy.

In such case the suicide and contestability provisions of the new policy will be applicable to the new benefits and/or increase in Death Benefit as of the issue date of the new policy.

EXCHANGE OPTION B: The option to exchange this Policy for a new policy of a comparable plan as determined by the Company which may have premiums which are less than the premiums required to keep this Policy in force. Requirements are:

1.  This Policy may be exchanged on or after the 10th Policy Anniversary provided the Insured's age is 70 or less.

2.  Evidence of insurability satisfactory to us must be submitted. As part of the evidence we have the right to require an examination of the Insured by a physician chosen by us. Such examination will be at our expense.

3.  The face amount of the new policy may not exceed the Face Amount of this Policy at the time of exchange.

4.  The premium for the new policy will be based on rates in effect at the time of exchange for the age and premium class of the Insured.

5.  The new policy will have a policy date and issue age corresponding to the date on which the exchange is exercised.

6.  The suicide and contestability periods of the new policy will be measured from the issue date of the new policy.

## PAYMENT OPTION PROVISIONS

We allow all or part of the amount payable under this Policy to be paid according to one of several options. Our consent to the election of an option is required if:

1. The proceeds to be settled under any option are $2,500 or less;
2. Any monthly payment or interest payment is $25 or less; or
3. Any Payee is a corporation, partnership, association, trust or assignee.

We will allow you to elect an option during the Insured's lifetime. To elect an option, we require that a written request be received at our Administrative Office. If the amount is payable in one sum, we allow the party to be paid, called the Payee, to elect an option within one month after the amount is payable.

The effective date of an option is the date of the Insured's death.

Payment under an option shall be made monthly unless requested otherwise in writing. We allow payments at 12 month, 6 month, or 3 month intervals, which will be appropriately adjusted. Under Option D, payment will begin at the end of the first interest period.

We may increase payments in any year under any of the options by additional interest credits.

If the Payee dies before the end of the certain period under options B or C, the balance of the certain payments will be paid to the beneficiary named by you or the Payee.

OPTION A. LIFE ONLY MONTHLY PAYMENT: Equal monthly payments will be made as long as the Payee lives. The amount of each payment will be calculated using the age and sex of the Payee. The age will be the Payee's age nearest birthday on the date payments begin. The amount will be calculated in accordance with Table A. This Table shows the amount of payment for each $1,000 to be settled.

OPTION B. INCOME FOR CERTAIN PERIOD AND LIFE: Equal monthly payments will be made during the selected period. Payments will continue after that period for as long as the Payee lives. The amount of each payment will be calculated using the age and sex of the Payee. The age will be the Payee's age nearest birthday on the date payments begin. Payments will be made in accordance with Table A. This Table shows the amount of payment for each $1,000 to be settled.

OPTION C. INCOME FOR CERTAIN PERIOD: Equal monthly payments continue for a selected period, up to 20 years. The rate of payments will not be less than that shown in Table B. The amounts will be calculated in accordance with Table B. This Table shows the amount of payment for each $1,000 to be settled.

OPTION D. INTEREST PAYMENT: You may name a period of time for us to hold the amount to be settled. Subject to our approval of the period of time, interest will be paid at not less than 1.5% per year. At the end of the period of time, the amount to be settled will be paid.

| | TABLE A | | | | | TABLE B | |
|---|---|---|---|---|---|---|---|
| | OPTION A | | OPTION B | | | OPTION C | |
| | Life | | Life With | | | Certain | |
| | | | 10 Years Certain | | | Period | |
| AGE | Male | Female | Male | Female | Years | Payment | |
| 50 | 3.24 | 3.00 | 3.22 | 2.99 | 1 | 83.90 | |
| 51 | 3.31 | 3.06 | 3.29 | 3.05 | 2 | 42.26 | |
| 52 | 3.39 | 3.13 | 3.36 | 3.11 | 3 | 28.39 | |
| 53 | 3.47 | 3.19 | 3.44 | 3.18 | 4 | 21.45 | |
| 54 | 3.55 | 3.26 | 3.52 | 3.25 | 5 | 17.28 | |
| 55 | 3.63 | 3.34 | 3.60 | 3.32 | 6 | 14.51 | |
| 56 | 3.73 | 3.41 | 3.68 | 3.39 | 7 | 12.53 | |
| 57 | 3.82 | 3.50 | 3.77 | 3.47 | 8 | 11.04 | |
| 58 | 3.92 | 3.58 | 3.87 | 3.56 | 9 | 9.89 | |
| 59 | 4.03 | 3.68 | 3.97 | 3.65 | 10 | 8.96 | |
| 60 | 4.15 | 3.78 | 4.08 | 3.74 | 11 | 8.21 | |
| 61 | 4.27 | 3.88 | 4.19 | 3.84 | 12 | 7.58 | |
| 62 | 4.40 | 3.99 | 4.30 | 3.94 | 13 | 7.05 | |
| 63 | 4.54 | 4.11 | 4.43 | 4.05 | 14 | 6.59 | |
| 64 | 4.69 | 4.23 | 4.56 | 4.16 | 15 | 6.20 | |
| 65 | 4.85 | 4.37 | 4.69 | 4.29 | 16 | 5.85 | |
| 66 | 5.02 | 4.51 | 4.83 | 4.42 | 17 | 5.55 | |
| 67 | 5.20 | 4.66 | 4.98 | 4.55 | 18 | 5.27 | |
| 68 | 5.39 | 4.83 | 5.13 | 4.69 | 19 | 5.03 | |
| 69 | 5.60 | 5.00 | 5.29 | 4.85 | 20 | 4.81 | |
| 70 | 5.82 | 5.19 | 5.45 | 5.00 | | | |
| 71 | 6.05 | 5.39 | 5.62 | 5.17 | | | |
| 72 | 6.30 | 5.61 | 5.80 | 5.35 | | | |
| 73 | 6.57 | 5.85 | 5.97 | 5.53 | | | |
| 74 | 6.85 | 6.11 | 6.15 | 5.72 | | | |
| 75 | 7.15 | 6.39 | 6.33 | 5.92 | | | |
| 76 | 7.47 | 6.69 | 6.52 | 6.12 | | | |
| 77 | 7.82 | 7.01 | 6.70 | 6.32 | | | |
| 78 | 8.19 | 7.36 | 6.88 | 6.53 | | | |
| 79 | 8.59 | 7.74 | 7.06 | 6.74 | | | |
| 80 | 9.01 | 8.16 | 7.24 | 6.95 | | | |
| 81 | 9.47 | 8.60 | 7.41 | 7.15 | | | |
| 82 | 9.95 | 9.09 | 7.57 | 7.35 | | | |
| 83 | 10.47 | 9.61 | 7.73 | 7.54 | | | |
| 84 | 11.02 | 10.18 | 7.88 | 7.71 | | | |
| 85 | 11.61 | 10.79 | 8.02 | 7.88 | | | |
| 86 | 12.24 | 11.45 | 8.14 | 8.03 | | | |
| 87 | 12.91 | 12.16 | 8.26 | 8.17 | | | |
| 88 | 13.61 | 12.91 | 8.37 | 8.29 | | | |
| 89 | 14.37 | 13.71 | 8.47 | 8.40 | | | |
| 90 | 15.17 | 14.55 | 8.55 | 8.50 | | | |

Rates for ages not shown will be furnished upon request. These monthly income factors are based on the 20
Annuity Mortality Table and interest at the rate of 1.5% per year. Rates shown above are on a per thousand basis

1177r FL 01/20

# INDEX

**SUBJECT**                                                    **PAGE**

AGE, MISSTATEMENT OF ........................................................................4
BENEFICIARY ........................................................................................3
CONTESTABILITY ..................................................................................3
CONTRACT, THE ....................................................................................3
EFFECTIVE DATE OF COVERAGE .........................................................4
EXCHANGE OPTION PROVISIONS .........................................................5
GRACE PERIOD ......................................................................................5
NON-PARTICIPATING ...........................................................................5
OWNER ..................................................................................................3
PAYMENTS BY US .................................................................................5
PAYMENT OPTION PROVISIONS ...........................................................7
POLICY DATES AND ANNIVERSARIES ...................................................3
PREMIUM ADJUSTMENTS .....................................................................4
PREMIUMS, PAYMENT OF ....................................................................4
REINSTATEMENT ..................................................................................5
RIGHT TO ASSIGN OR GIVE AWAY ......................................................4
SUICIDE ................................................................................................3
TRUST ...................................................................................................4

## SCHEDULE AND TABLES

POLICY DATA..........................................................................................2
SCHEDULE OF MAXIMUM PREMIUM BY YEAR ......................................2

**RELIASTAR LIFE INSURANCE COMPANY**

20 Washington Avenue South P.O. Box 20      Minneapolis, Minnesota  55440

**TERMINAL ILLNESS ACCELERATED BENEFIT RIDER**

NOTICE.  Benefits advanced under this Rider may or may not be taxable.  As with all tax matters, you should consult a personal tax advisor to assess the impact of this benefit.

## THE CONTRACT

RIGHT TO EXAMINE RIDER.  This Rider may be returned within 20 days after its receipt to the agent through whom this Policy was purchased or to our Home Office.  Upon cancellation, it will be void from the beginning.

CONSIDERATION.  This Rider is attached to and is a part of this Policy.  Unless changed by this Rider, all provisions, exclusions, and limitations of this Policy remain the same and apply to this Rider.  There is no charge for this Rider prior to the time Rider benefits are applied for.  It is issued in consideration of the application.

RENEWABILITY.  We will not cancel this Rider.  Unless you request termination of this Rider, it will remain in force as long as this Policy remains in force.

## DEFINITIONS

WE, OUR, US, YOU, YOUR.  As used in this Rider, the terms "we", "our", and "us" refer to ReliaStar Life Insurance Company.  The terms "you" and "your" refer to the Policy Owner.

EFFECTIVE DATE.  The Effective Date of this Rider will be as follows:

1.  For a Rider requested in the original application for this Policy, the Effective Date will be the Policy Date.

2.  For a Rider requested after the Policy Date, the Effective Date will be the date shown on a supplement to the Policy Data page.

3.  For any insurance that has been reinstated, or for any increase in coverage, the Effective Date of such coverage under this Rider will be the effective date of such coverage described in this Policy.

ELIGIBLE DEATH BENEFIT.  At any point in time, the Eligible Death Benefit for the Insured is the Death Benefit or Amount of Insurance on the life of the Insured provided by this and any other Policy in force with us and owned by you.  Any increase in the Death Benefit or Amount of Insurance will automatically be reflected in the calculation of the Eligible Death Benefit at the time the increase or decrease becomes effective.

BENEFIT RATIO.  The Benefit Ratio is the result of dividing (a) by (b) where:

(a)  is the requested portion of the Eligible Death Benefit; and

(b)  is the Death Benefit or Amount of Insurance under this Policy.

94060-1                                                                                           11/15/90

## DEFINITIONS (continued)

ADMINISTRATIVE EXPENSE CHARGE.  The Administrative Expense Charge will be the greater of $300 or 3% of the requested portion of the Eligible Death Benefit.

PHYSICIAN.  Physician means an individual who is licensed to practice medicine and treat illness or injury in the state in which treatment is received and who is acting within the scope of that license. Physician does not include:

1.  the Insured;

2.  the Owner;

3.  a person who lives with the Insured or Owner; or

4.  a person who is part of the Insured's or Owner's Immediate Family.

IMMEDIATE FAMILY.  Immediate Family means a spouse, child, brother, sister, parent, or grandparent of the Insured or the Owner, or a child, brother, sister, parent, or grandparent of the spouse of the Insured or Owner.

TERMINAL ILLNESS.  Terminal Illness is a noncorrectable medical condition that, with reasonable medical certainty, will result in the death of the Insured in less than 6 months from the date of the Physician Statement.

PHYSICIAN STATEMENT.  A Physician Statement means a statement acceptable to us, signed by a Physician, which:

1.  give the Physician's diagnosis of the Insured's noncorrectable medical condition;

2.  states that, with reasonable medical certainty, the noncorrectable medical condition will result in the death of the Insured in less than 6 months from the date of the Physician Statement, assuming the exercise of ordinary and reasonable medical care, advice and treatment available in the same or similar communities.

## BENEFITS

DESCRIPTION OF BENEFITS.  If the Insured develops a Terminal Illness, you may request an acceleration of a portion of the Eligible Death Benefit.  The Eligible Death Benefit will be determined as of the date the Notice of Claim is received at our Home Office.  The maximum amount of Eligible Death Benefit which you may request is shown on the Policy Data page.  However, in no case may the amount requested exceed the Death Benefit or Amount of Insurance on the life of the Insured provided by this Policy.

The requested portion of the Eligible Death Benefit will be subject to the following adjustments:

(a)  An actuarial discount will apply to the requested portion of the Eligible Death Benefit.  This discount reflects the early payment of amounts held under the Policy.  It will be based on an annual interest rate which has been declared by us and the then current premium or cost of insurance rate, both of which are in effect as of the date your Notice of Claim is received at our Home Office.

(b)  If, on the date we approve your request, there is a Policy loan outstanding on this Policy, a reduction to the requested portion of the Eligible Death Benefit will apply.  This reduction serves to repay a portion of the Policy loan and is determined as follows: (Outstanding Policy Loan) x (Benefit Ratio)

## BENEFITS (continued)

DESCRIPTION OF BENEFITS. (continued)

(c) A deduction will be made for the Administrative Expense Charge.

The actual payment to you will be equal to the requested portion of the Eligible Death Benefit minus (a), minus (b), and minus (c) above. This is your Accelerated Benefit Payment. Once an Accelerated Benefit Payment has been made, no future Accelerated Benefit Payments will be made.

WAIVER OF PREMIUMS OR COST OF INSURANCE. If all of the following occur:

1. a Waiver of Premium Rider or a Waiver of Cost of Insurance Rider on the Insured is attached to this Policy;

2. that Rider is in force at the time of the claim for this Rider's benefits; and

3. Proof of Terminal Illness is submitted and approved;

then for purposes of any Waiver of Premium Rider or for purposes of any Waiver of Cost of Insurance Rider that is in force, the Insured will be deemed to be Totally Disabled for as long as the most recently provided Proof of Terminal Illness continues to apply.

CONDITIONS FOR THE ACCELERATED BENEFIT PAYMENT. The Accelerated Benefit Payment is subject to the following conditions:

1. This Policy must be in force other than as Extended Term Insurance or Reduced Paid-Up Insurance.

2. There must be at least two years remaining from the date the Notice of Claim is received at our Home Office to the expiration or maturity date of the Policy.

3. During the lifetime of the Insured, we must receive Proof of Terminal Illness that is acceptable to us.

4. No prior request for an Accelerated Benefit Payment may have been made under this or any other Terminal Illness Accelerated Benefit Rider issued by us with respect to the Insured. If more than one request is received at the same time, the Insured will determine which request is deemed to have been received first and the other requests will be returned.

5. We must receive a consent form from all irrevocable beneficiaries, if any, and all assignees, if any. We also reserve the right to require a consent form from a spouse, the Insured, other beneficiaries, or any other person if, in our discretion, such person's consent is necessary to protect our interests.

6. This Rider provides for the advance of a portion of the Eligible Death Benefit of this Policy. This is not meant to cause involuntary access to proceeds ultimately payable to the beneficiary. Therefore, this benefit is not available:

   (a) if either you or the Insured is required by law to use this benefit to meet the claims of creditors, whether in bankruptcy or otherwise; or

   (b) if either you or the Insured is required by a government agency to use this benefit in order to apply for, obtain, or otherwise keep a government benefit or entitlement.

## BENEFITS (continued)

LIMITATIONS.  No benefit will be provided by this Rider if Terminal Illness results from intentionally self-inflicted injuries.

## ADJUSTMENTS TO THE POLICY

After an Accelerated Benefit Payment is made, the Policy will remain in force subject to the following adjustments:

1.  The Policy's Death Benefit or Amount of Insurance, its Guaranteed Cash Value, if any, its Cash Value, if any, and its required Premium, if any, will be reduced by the Benefit Ratio.

2.  Any outstanding Policy loan will be reduced by the portion of the Policy loan repaid as specified in the Description of Benefits provision of this Rider.

3.  We will mail to you, for attachment to the Policy, a new Policy Data page resulting from the Accelerated Benefit Payment.

## CLAIMS

NOTICE OF CLAIM.  Written Notice of Claim may be given to us any time after the date the Insured develops a Terminal Illness as defined in this Rider.  Notice of Claim must identify the Insured and be sent to us at our Home Office or given to one of our agents.

CLAIM FORMS.  We will send claim forms to the Owner when Notice of Claim is received.  If we do not mail the claim form within 15 days, the Owner will be considered to have complied with the Proof of Terminal Illness requirements by giving us a Physician Statement acceptable to us and a written statement of the nature and extent of the Terminal Illness.

PROOF OF TERMINAL ILLNESS.  Written proof of the Insured's Terminal Illness must be received by us before we will make a Benefit payment.  This proof will include a properly completed claim form and a Physician Statement acceptable to us.  We may request additional medical information from the Physician submitting the statement.  We will not unreasonably withhold our acceptance of Proof of Terminal Illness.

PHYSICAL EXAMINATION.  At our expense, we reserve the right to have a Physician of our choosing examine the Insured prior to making an Accelerated Benefit Payment.  In the event that the Physician we choose provides a different diagnosis of the Insured's medical condition, we reserve the right to rely on the Statement from the Physician of our choosing for claim purposes.

TIME OF PAYMENT OF CLAIMS.  All benefits described in this Rider will be available as soon as we receive satisfactory Proof of Terminal Illness.

PAYMENT OF CLAIMS.  All Rider benefits will be paid to the Owner.  Upon the death of the Owner, we will pay the benefits to the estate of the Owner.

## GENERAL PROVISIONS

REPRESENTATIONS AND CONTESTABILITY. All statements made in the application for this Rider by or on behalf of the Insured will, in the absence of fraud, be deemed representations and not warranties. The validity of this Rider with respect to the Insured will not be contestable after it has been in force for 2 years from its issue date during which time the Insured was living.

Any increase in coverage effective after the Policy Date or any reinstatement will not be contestable after such increase or reinstatement has been in force for 2 years from its effective date during which time the Insured was living. A contest will be based only on the application for the increase or reinstatement.

REINSTATEMENT. If this Policy is reinstated, this Rider will also be reinstated.

INCORRECT AGE OR SEX. If there is an error in the age or sex of the Insured, the benefits available under this Rider will be the amount that would be available based on the Death Benefit amount that this Policy would have provided at the correct age or sex.

CONFORMITY WITH STATE STATUTES. If any provision of this Rider is in conflict with the laws of the state in which the Insured resides on the Effective Date of this Rider, the provision is automatically amended to meet the minimum requirements of such laws.

TERMINATION OF RIDER. This Rider terminates:

1.  on the day we receive written request of the Owner;

2.  upon termination of this Policy; or

3.  when this Policy reaches its Maturity Date, if any.

Coverage will terminate at 12:00 midnight on any given termination date.

_Joy M. Benner_
Secretary

94060-3                                                          11/15/90

ıStar Life Insurance Company

ınistrative Office:   2000 21st Ave NW
                     Minot ND 58703-0890

**ING**

**Your Future. Made Easier.**<sup>SM</sup>

---

:y Number        : AD20140138
red Name         : Walter W Lane

end my Application for Life Insurance dated February 13, 2009 as follows. I understand and agree that this is part of my
ication and will be considered part of my policy/contract.

---

Product Information

Replacement Information

Initial Term Period:

Do you have existing or pending life insurance
policy or annuity contract? Proposed Insured:

10 Year

Company - West Coast Life
Policy # - Pending - Will place only one
policy
Amount - $2,040,000

posed] Insured Signature _____     Date _____

ner Signature _____     Date _____

Life

# TERM APPLICATION
ReliaStar Life Insurance Company, Minneapolis, MN

## A. PRODUCT INFORMATION

1. Initial Term Period:    ☐ 10 Year    ☑ 15 Year    ☐ 20 Year    ☐ 30 Year    ☐ Other _____

2. Face Amount $ *2,040,000*

3. Location of Sale *(city, state)* *TAMPA* , *FL*    Date *2/13/09*

## B. RIDER INFORMATION   *Select only if available with product.  Not all riders are approved in all states.*

☐ Waiver of Premium Rider

☐ Children's Insurance Rider *(Complete Children's Insurance Rider Application.)* $ _____

☐ Other _____ $ _____

## C. PROPOSED INSURED INFORMATION

1. First Name *WALTER*    MI *W*    Last Name *LANE*

2. Date of Birth **REDACTED**    Birth State and Country *KANSAS City, MO*

3. Sex: ☑ M ☐ F    Marital Status:    ☑ Married    ☐ Separated    ☐ Divorced    ☐ Single    ☐ Widowed
   **REDACTED**

4. SSN/Government Issued ID# **REDACTED**    Phone    **REDACTED**

5. Driver's License Number and State **REDACTED** *FL*    **REDACTED**

6. Residence Address **REDACTED**
   (P.O. Boxes are not permitted, other than APO/FPO)         City         State         ZIP

7. Is the Proposed Insured a U.S. Citizen? *(If "No", complete the Foreign Travel and Residence Questionnaire.)* .......... ☑ Yes ☐ No

8. Occupation (Include Duties) *Retired Physician*

9. Employer *GMS Florida West ptc Inc.*    Employer Phone *813-963-6235*

10. Employer Address *15320 Amberly Dr.*    *Tampa*    *FL*    *33647*
    City         State         ZIP

11. Proposed Insured's Annual Earned Income *0*    Annual Interest & Other Income *250,000*

12. Total Net Worth *Household NET WORTH $4,500,000*

13. Has the Proposed Insured ever used tobacco or nicotine products of any type? ............................ ☑ Yes ☐ No

    If "Yes", indicate Type *Cigarettes*  Amount & Frequency *1/2 pack per day* Month/Year Last Used *Quit 50 yrs ago and only smoked for 3 yrs.*

## D. SECONDARY ADDRESSEE
Florida law allows the applicant to name a secondary addressee to receive certain notices. Any secondary addressee named will be provided with a notice of any lapse **that may occur after the Insured reaches age 64 or older.**

1. First Name _____ MI _____ Last Name _____

2. Residence Address _____
   (P.O. Boxes are not permitted, other than APO/FPO)         City         State         ZIP

## E. PROPOSED INSURED PERSONAL HISTORY

1. Has the Proposed Insured ever declared bankruptcy? *(If "Yes", provide details in chart below, including date discharged)* ........................................................... ☐ Yes ☑ No

2. Is the Proposed Insured a member of the armed forces, including the Reserves or National Guard? *(If "Yes", complete Military Questionnaire.)* ........................................................... ☐ Yes ☑ No

3. Has the Proposed Insured ever traveled or resided outside the United States or Canada (other than a two week or less vacation to Western Europe or the Caribbean)?
(If "Yes", complete the Foreign Travel and Residence Questionnaire.)............................................ ☐ Yes ☑ No

4. Has the Proposed Insured ever flown a plane (other than as a commercial pilot), raced motor boats, automobiles or motorcycles, or participated in sky-diving, hang-gliding or other hazardous activities?
(If "Yes", complete the appropriate hazardous activities questionnaire.)........................................ ☐ Yes ☑ No

5. Except for traffic violations, has the Proposed Insured been the subject of or convicted in a criminal proceeding?
(If "Yes", provide details in chart below.)........................................................................................ ☐ Yes ☑ No

6. Has the Proposed Insured in the last five years had any motor vehicle accidents, alcohol or drug related convictions, or other moving violations while operating a motor vehicle? (If "Yes", provide details in chart below.)............ ☐ Yes ☑ No

For any "Yes" answer to questions 1, 5 or 6, please record information in the chart below.

| Ques. # | Explanation |
|---------|-------------|
|         |             |
|         |             |
|         |             |

## F. BENEFICIARY INFORMATION

Total percentage of primary beneficiary share must equal 100%. Total percentage of contingent beneficiaries' shares must equal 100%. *Please use whole percents. If no percentages are listed, beneficiaries' shares will be distributed equally; however, partial percentages are not allowed so the first listed beneficiary will receive the largest whole percentage.*

| Name (First, MI, Last) | DOB | Relationship | % | Beneficiary Type |
|------------------------|-----|--------------|---|------------------|
| GMS FLORIDA Westcoast Inc. | — | PAST EMPLOYER | 100% | ☑ Primary ☐ Contingent |
|  |  |  |  | ☐ Primary ☐ Contingent |

If beneficiary is a Trust or Corporation, provide name and date of trust agreement and state of incorporation.

Name of Trust/Corporation _GMS FLORIDA West Inc._ Date of Trust _____ State of Incorporation ___

## G. OWNER (PAYOR) Complete only if owner is to be other than Proposed Insured.

1. Owner is: ☐ Individual ☑ Corporation ☐ Trust ☐ Sole Proprietorship ☐ Partnership ☐ Other _____

2. Full Name _GMS FLORIDA WESTCOAST INC._

3. Relation to Proposed Insured _PAST EMPLOYER_

4. Residence Address _15320 AMBERLY DR. TAMPA ,FL 33647_
   (P.O. Boxes are not permitted other than APO/FPO)    City    State    ZIP

5. Billing Address _(SAME)_
   City    State    ZIP

6. Phone _813-963-0235_    SSN/TIN or Government Issued ID# _GMS TAX ID # 593577930_

7. Driver's License Number/State (individual only) _____ Date of Birth _____

8. Trust Contact Name _____ Date of Trust _____

9. Type of Trust: ☐ Revocable ☐ Irrevocable   Purpose of the Trust _____

10. State of Incorporation _____ Name of Trustee/Corporate Officer_____

11. Does the above trustee have sole authority to act on behalf of the Trust? ........................ ☐ Yes ☐ No
    (If "No", list the names & addresses of all trustees on a separate page, and obtain signatures from all trustees.)

## H. REPLACEMENT INFORMATION (Applies to both Owner and Proposed Insured.)

If you intend to replace existing coverage, tell the Agent of your intention and answer "Yes" to the replacement questions (#2 and #3 below). State law may require the Agent to give you information that will help you compare the policy you are applying for with the policy you intend to replace. If you are undecided about keeping existing coverage, indicating an intention to replace existing coverage may help you get the information you need to make a decision. If you do replace existing coverage, the new policy may contain, among other things, new suicide exclusions and contestability periods. Ask the Agent if you are unsure.

|  | Proposed Insured | | Proposed Owner | |
|---|---|---|---|---|
|  | Yes | No | Yes | No |
| 1. Do you have an existing or pending life insurance policy or annuity contract? *(If "Yes", provide details below. Complete state required replacement form for Model Replacement Regulation States ONLY.)* .......................... | ☐ | ☑ | ☐ | ☐ |
| 2. Are you considering using funds from an existing policy or contract to pay premiums on the policy you are applying for? *(If "Yes", complete state required replacement form and provide details below.)* ........................... | ☐ | ☑ | ☐ | ☐ |
| 3. Have you discontinued making premium payments, surrendered, forfeited, assigned to the insurer, or otherwise terminated an existing policy or contract or are you considering doing so? *(If "Yes", complete state required replacement form and provide details below.)* ........................... | ☐ | ☑ | ☐ | ☐ |

| Name | Insurance Company (Do not include group policies) | Contract / Policy # | Account Value / Amount of Coverage | Date Issued |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

## I. PAYMENT INFORMATION

1. Initial Payment:    ☐ Check    ☑ COD    ☐ Credit Card *(When available and selected, see #4 Credit Card Information.)*
   ☐ Military Allotment *(Active or retired military members must complete Military Allotment form and return to the Military finance department.)*
   ☐ Civil Service Allotment *(Federal Civil Service Application Checklist, Bank Allotment Authority, and Employer 1199 for Direct Deposit must be completed.)*

2. Initial Payment Amount $_____–0–_____    Subsequent Payment Amount $_____

3. Frequency of Subsequent Payments:
   ☑ Annual    ☐ Semi-Annual    ☐ Quarterly    ☐ Monthly *(Complete EFT form-Appendix E)*

4. Credit Card Payment *(When available)*:    N/A Visa    N/A MasterCard    N/A Discover    N/A American Express

   Full Name *(Print as it appears on card)* _____

   Card Number _____ N/A _____ Expiration Date _____ N/A

5. Would you like to backdate your policy to save age? *(If "Yes", see backdating disclosure, section M.)*........ ☐ Yes ☐ No

## J. MEDICAL TRANSFER STATEMENT *(Complete when submitting medical examinations from another insurance company.)*

1. Name of Insurance Company *John Hancock Life*    2. Date of Examination *1/15/09*

3. To the best of your knowledge and belief, are the statements in the examination true and complete today?........................................................................................ ☑ Yes ☐ No

4. Have you consulted a medical doctor or other practitioner since the examination indicated in question 2 above? *(If "Yes", please provide details below.)*........................... ☐ Yes ☑ No

## K. REPLACEMENT VERIFICATION  *(For Agent use ONLY)*

1. To the best of your knowledge and belief, will coverage under an existing life insurance policy or annuity contract be replaced, lapsed, surrendered, or borrowed against in relation to this application for insurance? *(If "Yes", submit state required replacement forms.)*........................... ☐ Yes ☑ No

2. Is the Owner or the Proposed Insured considering using funds from an existing policy or contract to pay premiums on the policy being applied for? *(If "Yes", complete state required replacement forms and provide details below.)* ........................... ☐ Yes ☑ No

3. Has the Owner or the Proposed Insured discontinued making premium payments, surrendered, forfeited, assigned to the insurer, or otherwise terminated an existing policy or contract or are they considering doing so? *(If "Yes", complete state required replacement form and provide details below.)*.............. ☐ Yes ☑ No

Company _____    Policy # _____    Amount _____

## N. AUTHORIZATION AND ACKNOWLEDGEMENT

The undersigned Owner and Proposed Insured declare: By completing this life insurance application, I understand that I am applying for life insurance coverage issued by RelaStar Life Insurance Company, referred to as the "Company." I understand and consent that this application and information obtained pursuant to this authorization may be used by the Company to evaluate my eligibility for life insurance. For underwriting and claims purposes, I authorize any physician, medical practitioner, hospital, clinic or medically related facility, insurance or reinsuring company, Medical Information Bureau, Inc. ("MIB"), any consumer reporting agency, or any other organization to release to the Company or their authorized representatives (including any consumer reporting agency) acting on their behalf, ALL INFORMATION requested by the Company about me and any minor children who are to be insured. This includes but is not limited to: Any medical information available as to diagnosis, treatment and prognosis with respect to any physical or mental condition and treatment of me or my minor children who are to be insured; Prescription drug records and related information maintained by physicians, pharmacy benefit managers and other sources; Any non-medical information about me or my minor children who are to be insured. By this authorization, each physician, medical practitioner, hospital, clinic or medically related facility contacted by the Company is instructed to provide the entire medical record in its possession concerning me or any minor children who are to be insured.

- I give my permission to the Company to collect consumer or investigative consumer reports about these same persons.
- I give my permission to the Company and other insurance companies affiliated with the Company to collect any and all medical record information for the purposes described in this form. I know that my medical records, including any alcohol or drug abuse information, may be protected by Federal Regulations - 42CFR Part 2. I may revoke this permission and authorization as it applies to any information protected by 42CFR Part 2 or by applicable state law at any time by mailing the written revocation to the Company at the address on the Consumer Privacy Notice, but not to the extent action has been taken. I understand that the release of medical records will not be requested with respect to tests performed to determine the presence of the Human Immunodeficiency Virus (HIV) antibody.

For any life insurance application or other insurance transaction that I may have with the Company, I specifically consent that some or all of the information obtained by this authorization may be sent to MIB, reinsurers, the agent who solicited my application and his or her principals, agents,

or contractors who process transactions regarding any insurance coverage I may have applied for or have with the Company or affiliated companies. I understand the information obtained by use of the Authorization will be used by the Company to determine eligibility for insurance and eligibility for benefits under an existing policy.

- **I understand that I may request to be interviewed if an investigative consumer report is prepared. You may contact me between the hours of _____ am/pm and _____ am/pm. My daytime phone number is ( )_____**
- **I know that I have a right to receive a copy of this form and a photocopy will be as valid as the original.**
- **This form will be valid for 24 months from the date shown below.**
- **I acknowledge receipt of the following notices: Notice Regarding Consumer Reports; Notice Regarding MIB; and Notice Regarding Information Practices.**

VERIFICATION:
Each of the undersigned also declares that:

A.  I have read the statements and answers given in this application and affirm that they are true and complete to the best of my knowledge and belief. I understand that the Company may seek to rescind or cancel the insurance coverage if there is any material misrepresentation.

B.  This application consists of Part 1, appendices and supplemental questionnaires, and will be the basis for any coverage issued on this application. Any coverage issued on this application will take effect only upon satisfaction of all of the Company's requirements, except as otherwise provided in the Conditional Receipt, if issued, with the same date as this application. Except where permitted expressly by statute or regulation, no agent or medical examiner has the authority to waive the answer to any question in the application, to pass on insurability, to make or alter any contract or waive any of the Company's rights or requirements. No change in the amount, classification, age at issue, plan of insurance or benefits on this application shall be effective unless agreed to in writing by the Proposed Insured and Owner.

C.  I certify, under penalty of perjury, that my Social Security/tax identification number(s) is(are) shown and is(are) correct and that I am not subject to back-up withholding.

**All completed materials must be sent to the Administrative Office at: ING Service Center, P.O. Box 5052, Minot, ND 58702-5052 or faxed to 866-308-7743.**

---

**Any person who knowingly and with intent to injure, defraud, or deceive any insurer, files a statement of claim or an application containing false, incomplete, or misleading information is guilty of a felony of the third degree.**

X Signature of Proposed Insured (if age 15 or older) (X) _Walter W Lane_

Signed at: (city/state) _Tampa, FL_          Date _2/13/09_

X Signature of Owner (if other than the Proposed Insured) (X)_____    Date _2/13/09_

Print Owner/Trustee Name: _Mark Weissman, MD_

X Signature of Parent or Guardian (if the Proposed Insured is a minor)_____

X Signature of Writing Agent _____

Print Writing Agent Name _MICHAEL J FOGUE_

Writing Agent State Lic. # _A081676_          Writing Agent # _731 0038_

Name of Agent _____

Agent Florida Lic. # _____          Agent # _____

---

136899          Page 5 of 5          Order #136899  FL 03/20/2007

# EXHIBIT

# B

U.S. Postal Service
CERTIFIED MAIL, RECEIPT
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com

OFFICIAL USE

| | |
|---|---|
| Postage | $ 46⁵ |
| Certified Fee | 3.30 |
| Return Receipt Fee (Endorsement Required) | 2.70 |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage | 6.46⁵ |

Sent To  ReliaStar Life Insurance Company
Street, Apt.  Administrative Office
or PO Box  2000 21st Avenue NW
City, State,  Minot, ND 58703-0890   RVW

PS Form 3

7013 0600 0000 7754 3377

One Tampa City Center, Suite 3200
201 North Franklin Street
Tampa, FL 33602

*Office* (813) 221-2626
*Fax* (813) 221-7335

BURR.COM

**VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED,
AND VIA FIRST CLASS U.S. MAIL**

ReliaStar Life Insurance Company
Administrative Office
2000 21st Ave NW
Minot, ND 58703-0890

Re:    Demand for Reinstatement of Life Insurance Policy - Policy Number AD20140138

To Whom it May Concern:

This law firm represents GMS Florida West Coast, Inc. ("GMS"), a primary care physician group. As you are aware, ReliaStar Life Insurance Company ("ReliaStar") issued Policy Number AD20140138, a Non-Participating Indeterminate Premium Term Life Insurance Policy, to Walter Lane, M.D. (the "Policy"). GMS is the beneficiary and owner of that Policy.

According to the Policy application, the address for any Policy notices is 15320 Amberly Drive, Tampa, Florida 33647. There was no suite designation included in the application. Moreover, Kimberly Thornton was the original contact person at GMS for the Policy. However, upon Ms. Thornton's departure from GMS in 2009, another GMS employee, Ms. Cathy Larkin, communicated with ReliaStar and informed you that Ms. Thornton was no longer at GMS and any future notices should be sent to Ms. Larkin's attention. Ms. Larkin called ReliaStar a second time when notices continued to be sent to Ms. Thornton's attention and reaffirmed her instruction that notices must be sent to her attention, and not to Ms. Thornton, who no longer worked for GMS.

While reviewing the Policy this past year, Ms. Larkin was informed by ReliaStar that the Policy had lapsed in 2015. Ms. Larkin immediately requested all information related to the alleged lapse. ReliaStar then sent Ms. Larkin a Late Payment Notice dated March 27, 2015 c/o Kimberly Thornton at 15320 Amberly Drive, Suite A, Tampa, Florida 33647-1647 and a Notice of Lapse of Insurance Coverage dated May 1, 2015 at the same address. Needless to say, both notices were sent to the wrong address. But even more important, neither of the notices was received by anyone at GMS.

ReliaStar Life Insurance Company
Administrative Office
December 7, 2016
Page 2

When Ms. Larkin finally did receive the above-referenced information informing her that the policy had lapsed, GMS immediately submitted an application to reinstate coverage under the Policy. After many unsuccessful attempts to discuss the application with members of ReliaStar's customer service team, Ms. Larkin enlisted the help of the insurance agent on the Policy. Ms. Larkin never received anything in writing from ReliaStar and was eventually informed by the insurance agent (not ReliaStar) that the application for reinstatement had been denied.

Florida law states that life insurance policies, except those relating to health benefits or to additional benefits in the event of death by accident or accidental means, shall adhere to the provisions of 627.453-627.462 of the Florida Statutes. Specifically, in order for the Policy to have lapsed for non-payment, ReliaStar had to comply with Florida Statute 627.4555. Section 627.4555 states, in relevant part, that:

> A contract for life insurance issued or issued for delivery in this state on or after October 1, 1997, covering a natural person 64 years of age or older, which has been in force for at least 1 year, may not be lapsed for nonpayment of premium unless, after expiration of the grace period, and at least 21 days before the effective date of any such lapse, the insurer has mailed a notification of the impending lapse in coverage to the policyowner and to a specified secondary addressee if such addressee has been designated in writing by name and address by the policyowner.

While the Policy itself may not specifically require notice prior to lapse, under Florida law, "all existing applicable or relevant and valid statutes, ... at the time a contract is made become a part of it and must be read into it just as if an express provision to that effect were inserted therein, except where the contract discloses a contrary intention." *James v. Hartford Life & Accident Ins. Co.*, No. 615CV1632ORL22DAB, 2016 WL 3102211, at *3 (M.D. Fla. Feb. 8, 2016) (*citing Shelton v. Liberty Mut. Fire Ins. Co.*, 578 Fed.Appx. 841, 845 (11th Cir. 2014)). Thus, ReliaStar was required to provide notice of the impending lapse in coverage to the policyowner. ReliaStar as the insurer bears the burden of proving that the Policy was cancelled in accordance with the terms of the policy, including the applicable statutes. *Umerah v. John Hancock Life Ins. Co. (USA)*, 458 F. App'x 880, 881 (11th Cir. 2012). If a policy does not specify the method of giving the written notice and the notice is given by mail, the effective date of cancellation generally is to be determined based on the <u>date of receipt of the notice by the insured</u>." *Id.*; *citing Aetna Ins. Co. v. Settembrino*, 324 So.2d 113, 114 (Fla. 3d DCA 1975). In this case, GMS did not receive the alleged notices and based on that, there are disputed issues of fact that would preclude a motion to dismiss or a motion for summary judgment on a breach of contract claim.

ReliaStar Life Insurance Company
Administrative Office
December 7, 2016
Page 3

In an attempt to avoid costly litigation for both sides, please accept this demand letter that ReliaStar reinstate the Policy and accept payment of the premiums that have become due since the alleged effective lapse date of May 1, 2015.  If we are not in receipt of confirmation in writing that the Policy has been reinstated by December 20, 2016, GMS has instructed me to pursue all remedies available to it for breach of contract for wrongfully terminating the Policy without first advising GMS that the Policy was going to lapse due to nonpayment, including its fees and costs incurred in seeking the appropriate remedy in this matter.

GMA is prepared to take legal action to protect its rights but would prefer to settle this matter as I am sure ReliaStar would.  Thus, we look forward to resolving this matter with you quickly and privately.

Very truly yours,

Robert V. Williams

RVW

cc:    Mark Weissman, M.D.
       Cathy Larkin

# EXHIBIT

# C

**RellaStar Life Insurance Company**
Compliance
20 Washington Ave South, Mail Stop 5W
Minneapolis, MN 55401
Tel: 612-342-3269
Fax: 612-492-0943

RECEIVED
JAN 2 0 2017

January 19, 2017                                        **Faxed to (813) 221-7335 and sent via UPS Overnight**

Burr & Forman LLP
Attn: Robert V. Williams
One Tampa City Center, Suite 3200
201 North Franklin Street
Tampa, FL 33602

RE:    RellaStar Life Insurance Company Policy Number: AD20140138
       Insured: Walter W. Lane
       Owner: GMS Florida Westcoast Inc.

Dear Mr. Williams:

This letter is in response to your demand letter dated December 7, 2016 sent to RellaStar Life Insurance
Company requesting reinstatement of Policy Number AD20140138 (the "Policy"), an indeterminate
Premium Term Life Insurance Policy to Age 95, with a ten year level premium term. The Policy was
issued by RellaStar Life Insurance Company (the "Company"), effective March 26, 2009 with a face
amount of $2,040,000, previously insuring the life of Walter Lane (**Attachment 1**). After a thorough review
of our records regarding the administration, lapse, and subsequent denial of reinstatement, we are
maintaining our position not to reinstate said Policy. Information supporting our position is provided below.

**Address of Record**
Our review of the Policy record shows the address on the application for GMS Florida Westcoast Inc.
("GMS") as 15320 Amberly Drive Tampa, FL 33647. On May 8, 2009, a member of the writing agency,
Florida Financial Group, LLC. ("Florida Financial"), contacted the Company to update the mailing address
for GMS to c/o Kimberly Thornton, 15320 Amberly Drive, Suite A, Tampa, FL 33647. In response to this
address change request, and pursuant to our normal procedures, the Company mailed correspondence
to the current address of record at the time as well as the newly updated address, advising of the address
change (**Attachment 2**). Additional follow up correspondence was mailed to both addresses again on
June 3, 2009 confirming the address change (**Attachment 3**).

While your letter states Ms. Cathy Larkin contacted RellaStar on two separate occasions to update the
address to have correspondence sent to her attention, the Company does not have record of being
contacted by Ms. Larkin for this request or an additional address change request made by Florida
Financial, Ms. Larkin or another representative of GMS. However, information contained in the Company
records does show that Ms. Larkin contacted the Company on March 21, 2014, but was advised that the
Company did not have anything on file authorizing her to receive information on the Policy. On January
27, 2016, Ms. Larkin contacted the Company again, authorization was provided by Mark Wiseman M.D,
the authorized representative on the account and Ms. Larkin was provided information regarding the
Policy status and lapse. On January 29, 2016, Ms. Larkin contacted the Company to obtain a
reinstatement application for Mr. Lane and GMS to complete.

**Policy Notices and Subsequent Lapse of the Policy**
A review of our records show that the billing notices, late payment notices, and subsequent lapse notice
were sent pursuant to our contractual obligations. From 2010 through 2015, GMS was sent annual
payment notices, requesting premiums be made by the stated due date. In the event that payment was
not received by the due date, a Late Payment Reminder was sent, requesting payment prior to the end of
the Grace Period. In 2015, the Company sent three separate notices to GMS at the address of record, the

January 19, 2107
Lane
2

Annual Premium Notice, Late Payment Reminder and the Notice of Lapse of Insurance Coverage (**Attachment 4**) with no record of receiving returned mail from the U.S. Postal Service as undeliverable. In accordance with the terms of the contract, when the premium payment necessary to keep the Policy was not received by the end of the grace period on May 1, 2015, the policy lapsed providing no further death benefit on the life of Mr. Lane. Please note, Annual Premium and Late Payment Reminder Notices for 2010 through 2014 were also sent to the same address of record of c/o Kimberly Thornton, 15320 Amberly Drive, Suite A, Tampa, Florida 33647 with no returned mail from the U.S. Postal Service and premium payments were received from GMS each year.

**Reinstatement Request**
After the Policy lapsed for non-payment of premium, GMS was offered the opportunity to apply for reinstatement. Specifically, the Policy issued in 2009 stated in part, that if the premium is not paid by the end of the Grace Period, we will allow this Policy to be put back in force, subject to the following: 1. Your request in writing in advance; 2. Evidence of insurability satisfactory to us; 3. Payment of premium for the Grace Period... 4. Your reinstating the Policy within 3 years of the due date of the first unpaid premium.

Our records show that an application for reinstatement was received on February 17, 2016. The Company reviewed the information provided on the reinstatement application and determined due to Mr. Lane's medical history he would no longer qualify for the same premium rate class of Standard Non-Tobacco, Table 2. The specific reason for the decline was only sent to Mr. Lane at his address on the reinstatement application due to confidential medical information.

**Conclusion**
While we are unable reinstate the Policy, Mr. Lane may qualify for a new policy at a different rating classification. We encourage GMS and Mr. Lane to contact Florida Financial or an agent of their choosing to explore options that may be available to them that they have not yet considered, including submitting a new application for a new policy for full underwriting review.

If you have any questions regarding this matter, or would like to discuss further, please contact me at telephone number (612) 342-3269.

Sincerely,

Bradley Wolff

Bradley Wolff FLMI, ACS, AIRC
Compliance Analyst, Complaint Resolution Team

# Attachment 1

ReliaStar Life Insurance Company
20 Washington Ave South PO Box 20
Minneapolis MN 55440

### STATEMENT OF POLICY COST AND BENEFIT INFORMATION

This exhibit provides basic information about the cost and coverage of the insurance being solicited. This statement shall not be considered as an offer or as altering or modifying any Policy or rider that may be issued



| COVERAGE PROVIDED BY YOUR POLICY | INITIAL ANNUAL PREMIUM | INITIAL FACE AMOUNT OF COVERAGE |
|---|---|---|
| TermSmart07-10 Standard No Tbco Rated Table 2 | $97,714.80 | $2,040,000.00 |
| Accelerated Benefit Rider | $0.00 | $0.00 |

### ANNUAL PREMIUMS FOR THIS POLICY ARE

| POLICY YEARS | 1 | 2 | 3 | 4 | 5 | 10 | 20 | AGE 65 |
|---|---|---|---|---|---|---|---|---|
| TermSmart07-10 Standard No Tbco Rated Table 2 | 97,714.80 | 97,714.80 | 97,714.80 | 97,714.80 | 97,714.80 | 97,714.80 | 2,667,400.80 | 0.00 |
| Accelerated Benefit Rider | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |

### GUARANTEED BENEFITS PAYABLE ON DEATH

| POLICY YEARS | 1 | 2 | 3 | 4 | 5 | 10 | 20 | AGE 65 |
|---|---|---|---|---|---|---|---|---|
| TermSmart07-10 Standard No Tbco Rated Table 2 | 2,040,000 | 2,040,000 | 2,040,000 | 2,040,000 | 2,040,000 | 2,040,000 | 2,040,000 | 0 |
| Accelerated Benefit Rider | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

### COST INDICES

#### SURRENDER COST INDEX

| POLICY YEAR | 10 | 20 |
|---|---|---|
| TermSmart07-10 Standard No Tbco Rated Table 2 | 47.90 | 374.09 |
| Accelerated Benefit Rider | 0.00 | 0.00 |

#### NET PAYMENT COST INDEX

| POLICY YEAR | 10 | 20 |
|---|---|---|
| TermSmart07-10 Standard No Tbco Rated Table 2 | 47.90 | 374.09 |
| Accelerated Benefit Rider | 0.00 | 0.00 |

Any questions, please contact your agent.

Date Prepared : 03/19/2009

Agent:  Florida Financial Group
Address: Florida Financial Group
1855 State Rd #434
Ste 260
Longwood, FL  32750-5069

| | | | |
|---|---|---|---|
| POLICY NUMBER | AD20140138 | POLICY DATE | March 26, 2009 |
| INSURED | Walter W Lane | FACE AMOUNT | 2,040,000.00 |
| ISSUE AGE | 75 Male | PREMIUM INTERVAL | Annual |
| | | PREMIUM CLASS | Standard No Tbco Rated Table 2 |
| INITIAL PREMIUM | $97,714.80 | | |
| ISSUE DATE | March 19, 2009 | EXPIRY DATE | March 26, 2039 |

### IMPORTANT - READ YOUR POLICY CAREFULLY

This is a legal contract between you and ReliaStar Life Insurance Company. This contract is called a Policy. The word "you" means the Policy Owner. The application shows the name of the Policy Owner. The word "we" means the ReliaStar Life Insurance Company. We promise to pay the Death Benefit to the Beneficiary subject to the provisions of this Policy. See "Payments By Us," for description of the Death Benefit. The Beneficiary is the party that you name. We will pay the Death Benefit when we receive proof of death of the Insured. The Policy Data Page shows the name of the Insured. Age at any time is the Issue Age shown on the Policy Data Page increased by the number of policy years completed. For information or service on this Policy, contact the person who sold you this Policy, or any of our offices including our Home Office.

### NOTICE - RIGHT TO CANCEL

You have a right to return this Policy. Read it carefully. If you do not want this Policy, you may deliver or mail it to the person who sold it to you or to any of our offices including our Home Office. You must do this by the twentieth day after you receive this Policy. All payments made for this Policy will be returned to you within ten days after the returned Policy is received at the Home Office or Administrative Office.

### RELIASTAR LIFE INSURANCE COMPANY
#### A Stock Company

**Home Office:**
20 Washington Ave South
PO Box 20
Minneapolis, MN 55440
Executed at our Home Office.

**Administrative Office:**

2000 21st Ave NW
Minot, ND 58703-0890

| | |
|---|---|
| Secretary | President |

### INDETERMINATE PREMIUM TERM LIFE INSURANCE POLICY TO AGE 95
### WITH EXCHANGE OPTIONS AND PREMIUM ADJUSTMENT PROVISION
### NON-PARTICIPATING

### POLICY SUMMARY

This is a Non-Participating Indeterminate Premium Term Life Insurance Policy to Age 95 with Exchange Options and a Premium Adjustment provision. The Face Amount remains unchanged as long as the Policy is in force. Premiums are payable to age 95, or until the Insured's death, whichever comes first. During the Initial Term Period, premiums are level and are based on the plan elected by you at the time of application. After the Initial Term Period, premiums may increase but will never be greater than those shown in the Schedule of Maximum Premium by Year.

## POLICY DATA

| | | | |
|---|---|---|---|
| POLICY NUMBER | AD20140138 | POLICY DATE | March 26, 2009 |
| INSURED | Walter W Lane | FACE AMOUNT | 2,040,000.00 |
| ISSUE AGE | 75  Male | PREMIUM INTERVAL | Annual |
| | | PREMIUM CLASS | Standard  No Tbco Rated Table 2 |
| INITIAL PREMIUM | $97,714.80 | | |
| ISSUE DATE | March 19, 2009 | EXPIRY DATE | March 26, 2039 |

### SCHEDULE OF FACE AMOUNT AND PREMIUM BY PLAN

| | | | ANNUAL PREMIUM | |
|---|---|---|---|---|
| PLAN | FACE AMOUNT | YEARS OF COVERAGE | POLICY YEAR 1 | YEARS PAYABLE |
| Indeterminate Premium Term Insurance to Age 95 with Exchange Options and Premium Adjustment Provision | 2,040,000.00 | 30 | $97,714.80 | See Next Page |

Initial Term Period : 10 Policy Years

### SCHEDULE OF RIDERS

Terminal Illness Accelerated Benefit Rider: The Maximum Amount Which May Be Requested Is The Lesser Of  25% Of The Eligible Death Benefit Defined In The Rider Or $250,000.  The Minimum Amount Which May Be Requested Is $5,000.

**Total Premium:**                                                                     $97,714.80

### PREMIUM FOR POLICY YEAR 1

| PREMIUM INTERVAL | ANNUAL | SEMI-ANNUAL | QUARTERLY | MONTHLY |
|---|---|---|---|---|
| PREMIUM | $97,714.80 | $50,811.70 | $25,894.43 | $9,282.91 |

This Page has been left blank.

INSURED: Walter W Lane                                                                POLICY NUMBER: AD20140138

Maximum premiums for all years shown below in the Schedule of Maximum Premium by Year. The premium actually charged may be lower but never higher than the maximum premium shown.

<u>SCHEDULE OF MAXIMUM PREMIUM BY YEAR</u>

For premium intervals other than Annual, multiply your premium by the appropriate modal factor shown below:

| PREMIUM INTERVAL | MODAL FACTOR |
|---|---|
| Semi-Annual | 0.520 |
| Quarterly | 0.265 |
| Monthly | 0.095 |

| POLICY YEAR | MAXIMUM ANNUAL PREMIUM PAYABLE FOR BASIC POLICY |
|---|---|
| 1 | $97,714.80 |
| 2 | $97,714.80 |
| 3 | $97,714.80 |
| 4 | $97,714.80 |
| 5 | $97,714.80 |
| 6 | $97,714.80 |
| 7 | $97,714.80 |
| 8 | $97,714.80 |
| 9 | $97,714.80 |
| 10 | $97,714.80 |
| 11 | $1,221,754.80 |
| 12 | $1,353,171.60 |
| 13 | $1,496,665.20 |
| 14 | $1,650,481.20 |
| 15 | $1,812,763.20 |
| 16 | $1,982,062.80 |
| 17 | $2,141,325.60 |
| 18 | $2,307,320.40 |
| 19 | $2,482,434.00 |
| 20 | $2,667,400.80 |
| 21 | $65,258.40 |

MAXIMUM PREMIUMS CONTINUED ON NEXT PAGE

1177R                                     2 cont'd                                     20010

This Page has been left blank.

INSURED: Walter W Lane

POLICY NUMBER: AD20140138

MAXIMUM PREMIUMS CONTINUED FROM PREVIOUS PAGE

SCHEDULE OF MAXIMUM PREMIUM BY YEAR

| POLICY YEAR | MAXIMUM ANNUAL PREMIUM PAYABLE FOR BASIC POLICY |
|---|---|
| 22 | $65,258.40 |
| 23 | $65,258.40 |
| 24 | $65,258.40 |
| 25 | $65,258.40 |
| 26 | $65,258.40 |
| 27 | $65,258.40 |
| 28 | $65,258.40 |
| 29 | $65,258.40 |
| 30 | $65,258.40 |

This Page has been left blank.

## GENERAL PROVISIONS

THE CONTRACT: This Policy is a legal contract. This Policy, the attached application, and any attached riders, endorsements or amendments make up the whole contract. We issue this Policy in return for the written application and the payment of the initial premium. Unless there is fraud, legally the statements made by you or by the Insured are representations and not warranties. No such statements made shall be used in defense of a claim under the Policy unless it is contained in the written application and a copy of the application is attached to the Policy when issued or delivered.

Any change or waiver of the provisions of this Policy must be in writing and signed by the President, a Vice President, or the Secretary of the Company.

POLICY DATES AND ANNIVERSARIES: The Policy Date is used to calculate Premium Due Dates, Policy Anniversaries and Policy Years. The first Policy Anniversary is one year after the Policy Date. The period between the Policy Date and the first Policy Anniversary, or from one Anniversary to the next, is called a Policy Year.

OWNER: The Owner is the person named in the application who may exercise all ownership rights granted under this Policy during the lifetime of the Insured. The word "you" in this Policy refers to the Owner.

BENEFICIARY: The Beneficiary is the person or persons named in the application who have the right to the Death Benefit. When the Insured dies, we will pay the Death Benefit to the Primary Beneficiary or to the Contingent Beneficiary if no Primary Beneficiary is then living.

If there is no named Beneficiary living at the death of the Insured, we will pay the Death Benefit to you. If you are the Insured, we will pay the Death Benefit to your estate.

If a Beneficiary dies simultaneously with an Insured, or within 15 days after an Insured but before due proof of the Insured's death has been received at the Administrative Office of our Company, the Death Benefit shall be payable as if such Beneficiary had died before the Insured, unless you have directed otherwise.

You have the right to change Beneficiaries unless you have specified, in writing, that a Beneficiary is irrevocable. To change Beneficiaries, a written request satisfactory to us must be received and recorded at our Administrative Office. The request must be signed by you, and also by the Beneficiary if the Beneficiary is irrevocable. The change will then take effect as of the date on which the request was signed. This provision is subject to any payments made or other action taken by us.

CONTESTABILITY: We have a right to contest the validity of this Policy based on material misrepresentations made in the initial application for two years from the Issue Date, during which time the Insured was living. Thereafter, we may contest this Policy only if premiums due are not paid by the end of the Grace Period.

For any reinstatement, we cannot argue against its validity after such reinstatement has been in force for two years from its effective date, during which time the Insured was living. The basis for any contest after reinstatement will be limited to material misrepresentations on the application for reinstatement.

SUICIDE: If the Insured commits suicide, while sane or insane, within two years of the Issue Date, we will pay only the amount of premiums paid to us.

## GENERAL PROVISIONS (continued)

**MISSTATEMENT OF AGE OR SEX:** If the Insured's age or sex has been misstated, any amount that we will pay at any time will be the amount that the premium would have bought at the correct age and sex.

**RIGHT TO ASSIGN OR GIVE AWAY:** You may assign or give away any of your rights under this Policy unless you state otherwise in writing. To assign or give away any of your rights, we must receive written notice of it at our Administrative Office. We will not be responsible for the validity of any action or payment concerning it.

**TRUST:** We will allow a Trust to become the Owner or Beneficiary of this Policy. We will deal with the Trustee of the Trust according to the contents of this Policy without regard to any provisions, changes or amendments of any trust agreement. We shall not be responsible for any money paid to a Trust. Such payment shall fully discharge us for the amount so paid.

## POLICY PROVISIONS

**EFFECTIVE DATE OF COVERAGE:** The effective date of coverage is the earliest date on or after the Policy Date upon which all of the following conditions have been met: (1) the Policy has been delivered, (2) the initial premium has been paid while the Insured is living, and (3) there has been no change in the health of the Insured as shown in the application so as to increase the mortality class before such delivery and payment is complete.

**PAYMENT OF PREMIUMS:** Your initial premium must be paid when your Policy is delivered. All premiums after the initial premium are due and payable on or before the date they are due and must be mailed to us at our Administrative Office or paid to an authorized Agent. In order for a premium to be effective it must be received at the Administrative Office. A premium receipt signed by an officer of the Company will be furnished upon request.

You may pay your premiums once, twice, four or twelve times a year. These premiums are shown in your Policy as the annual, semi-annual, quarterly or monthly premiums. We have the right, however, not to accept a premium payment if less than $25.00.

If you decide to pay premiums once a year, your annual premium will be due on the Policy Anniversary Date of your Policy. Should you decide to pay premiums more than once a year, your semi-annual premiums will be due every six months, your quarterly premiums will be due every three months and your monthly premiums will be due every month. In each year, one of the premium due dates must fall on the Policy Anniversary Date. Except as otherwise provided in the Policy, the Policy will automatically become void if any premium is not paid when due.

**PREMIUM ADJUSTMENTS:** During the Initial Term Period shown on the Policy Data Page, premiums for this Policy are level and are based on the plan elected by you at the time of application. Premiums for Supplementary Benefits, if any, may not be level during this Initial Term Period. After the Initial Term Period, premiums may increase but will never be greater than those shown in the Schedule of Maximum Premium by Year.

Before each Policy Year begins, written notice of the premiums for that year will be sent to the Owner. Premiums may not be adjusted more than once a year. Any adjustment of premiums will be based on appropriate actuarial factors and expectations of future investment earnings, mortality, persistency and expenses. Each such adjustment will be on a uniform basis for all Insureds of the same policy age, sex and premium class whose policies have been in force the same length of time. No change in premium class will occur because of deterioration of health or change in occupation. This provision applies only to the basic Policy.

POLICY PROVISIONS (continued)

GRACE PERIOD: After the initial premium, payments must be made by the 31st day after the due date, otherwise this Policy will end. The Policy will be in force during these 31 days of grace. If the Insured dies during the Grace Period, we will deduct any unpaid premium from the Death Benefit.

REINSTATEMENT: If the premium is not paid by the end of the Grace Period, we will allow this Policy to be put back in force, subject to the following:

1. Your request in writing in advance;
2. Evidence of insurability satisfactory to us;
3. Payment of premium for the Grace Period in which the premium was in default with 6% interest compounded annually, plus the current premium due for reinstatement; and
4. Your reinstating this Policy within 3 years of the due date of the first unpaid premium.

PAYMENTS BY US: The Death Benefit will be the sum of:

1. The Face Amount then in force; plus
2. Any added benefit provided by a rider; plus
3. Any paid and unearned premium; less
4. Any premium then due and unpaid.

Unless an optional method of payment has been elected, the Death Benefit will be paid in a single sum. Any request for payment and proof of death under this Policy must be sent to our Administrative Office. When we pay the Death Benefit, we will require the return of this Policy.

The Death Benefit proceeds will include interest, at an annual rate equal to or greater than the most recently published Moody's Corporate Bond Yield Average-Monthly Average Corporate determined as of the date we receive written due proof of the Insured's death, from the date such proof of the Insured's death is received by us to the date the proceeds are paid.

NON-PARTICIPATING: This Policy is not entitled to share in surplus earnings. No dividends will be paid.

EXCHANGE OPTION PROVISIONS

While in force, this Policy may be exchanged for a new policy under one of the following options according to the requirements shown. Any riders attached to this Policy at time of exchange may be included in the new policy subject to our approval. Your written request for exchange must be made in advance. No premium payment may be outstanding.

If no option is elected, this Policy will automatically continue to provide level term coverage to age 95 with increasing premiums. The maximum premiums are the premiums shown in the Schedule of Maximum Premium by Year.

EXCHANGE OPTION A: The option to convert this Policy to a permanent policy which is acceptable to the Company at the time of conversion. Evidence of insurability is not required. Requirements are:

1. This Policy may be converted on or before the earlier of the end of the Initial Term Period specified on the Policy Data Page or the Policy Anniversary coinciding with the Insured's age 75.

EXCHANGE OPTION PROVISIONS (continued)

2.  The face amount of the new policy may not exceed the Face Amount of this Policy on the effective date of conversion. The effective date of conversion is the date we receive your application for conversion accompanied by the initial premium for the new policy.

3.  The face amount of the new policy may not be less than the minimum required for the plan selected. At least one plan will always be available in an amount to which this Policy may be converted.

4.  The new policy will be in the same premium class as this Policy if available at the time of conversion, otherwise, in the most comparable class available at the time of conversion. The premium will be based on rates in effect for the age, sex and premium class of the Insured at the time of conversion.

5.  The new policy will have a policy date and issue age corresponding to the effective date of conversion. The date of conversion is the date we receive your application for conversion accompanied by the initial premium for the new policy.

After this Policy has been in force for two years, the suicide and contestability periods will not start anew in any new policy which is issued pursuant to the exercising of Exchange Option A, except for either or both of the following conditions:

1.  The new policy contains new benefits not contained in this Policy; or
2.  There is an increase in the Death Benefit of the new policy.

In such case the suicide and contestability provisions of the new policy will be applicable to the new benefits and/or increase in Death Benefit as of the issue date of the new policy.

EXCHANGE OPTION B:  The option to exchange this Policy for a new policy of a comparable plan as determined by the Company which may have premiums which are less than the premiums required to keep this Policy in force. Requirements are:

1.  This Policy may be exchanged on or after the 10th Policy Anniversary provided the Insured's age is 70 or less.

2.  Evidence of insurability satisfactory to us must be submitted. As part of the evidence we have the right to require an examination of the Insured by a physician chosen by us. Such examination will be at our expense.

3.  The face amount of the new policy may not exceed the Face Amount of this Policy at the time of exchange.

4.  The premium for the new policy will be based on rates in effect at the time of exchange for the age and premium class of the Insured.

5.  The new policy will have a policy date and issue age corresponding to the date on which the exchange is exercised.

6.  The suicide and contestability periods of the new policy will be measured from the issue date of the new policy.

PAYMENT OPTION PROVISIONS

We allow all or part of the amount payable under this Policy to be paid according to one of several options. Our consent to the election of an option is required if:

1. The proceeds to be settled under any option are $2,500 or less;
2. Any monthly payment or interest payment is $25 or less; or
3. Any Payee is a corporation, partnership, association, trust or assignee.

We will allow you to elect an option during the Insured's lifetime. To elect an option, we require that a written request be received at our Administrative Office. If the amount is payable in one sum, we allow the party to be paid, called the Payee, to elect an option within one month after the amount is payable.

The effective date of an option is the date of the Insured's death.

Payment under an option shall be made monthly unless requested otherwise in writing. We allow payments at 12 month, 6 month, or 3 month intervals, which will be appropriately adjusted. Under Option D, payment will begin at the end of the first interest period.

We may increase payments in any year under any of the options by additional interest credits.

If the Payee dies before the end of the certain period under options B or C, the balance of the certain payments will be paid to the beneficiary named by you or the Payee.

OPTION A.  LIFE ONLY MONTHLY PAYMENT:  Equal monthly payments will be made as long as the Payee lives. The amount of each payment will be calculated using the age and sex of the Payee. The age will be the Payee's age nearest birthday on the date payments begin. The amount will be calculated in accordance with Table A. This Table shows the amount of payment for each $1,000 to be settled.

OPTION B.  INCOME FOR CERTAIN PERIOD AND LIFE:  Equal monthly payments will be made during the selected period. Payments will continue after that period for as long as the Payee lives. The amount of each payment will be calculated using the age and sex of the Payee. The age will be the Payee's age nearest birthday on the date payments begin. Payments will be made in accordance with Table A. This Table shows the amount of payment for each $1,000 to be settled.

OPTION C.  INCOME FOR CERTAIN PERIOD:  Equal monthly payments continue for a selected period, up to 20 years. The rate of payments will not be less than that shown in Table B. The amounts will be calculated in accordance with Table B. This Table shows the amount of payment for each $1,000 to be settled.

OPTION D.  INTEREST PAYMENT:  You may name a period of time for us to hold the amount to be settled. Subject to our approval of the period of time, interest will be paid at not less than 1.5% per year. At the end of the period of time, the amount to be settled will be paid.

TABLE A                                                                TABLE B

| | OPTION A | | OPTION B | | | OPTION C | |
| | Life | | Life With | | | Certain | |
| | | | 10 Years Certain | | | Period | |
| AGE | Male | Female | Male | Female | | Years | Payment |
|---|---|---|---|---|---|---|---|
| 50 | 3.24 | 3.00 | 3.22 | 2.99 | | 1 | 83.90 |
| 51 | 3.31 | 3.06 | 3.29 | 3.05 | | 2 | 42.26 |
| 52 | 3.39 | 3.13 | 3.36 | 3.11 | | 3 | 28.39 |
| 53 | 3.47 | 3.19 | 3.44 | 3.18 | | 4 | 21.45 |
| 54 | 3.55 | 3.26 | 3.52 | 3.25 | | 5 | 17.28 |
| 55 | 3.63 | 3.34 | 3.60 | 3.32 | | 6 | 14.51 |
| 56 | 3.73 | 3.41 | 3.68 | 3.39 | | 7 | 12.53 |
| 57 | 3.82 | 3.50 | 3.77 | 3.47 | | 8 | 11.04 |
| 58 | 3.92 | 3.58 | 3.87 | 3.56 | | 9 | 9.89 |
| 59 | 4.03 | 3.68 | 3.97 | 3.65 | | 10 | 8.96 |
| 60 | 4.15 | 3.78 | 4.08 | 3.74 | | 11 | 8.21 |
| 61 | 4.27 | 3.88 | 4.19 | 3.84 | | 12 | 7.58 |
| 62 | 4.40 | 3.99 | 4.30 | 3.94 | | 13 | 7.05 |
| 63 | 4.54 | 4.11 | 4.43 | 4.05 | | 14 | 6.59 |
| 64 | 4.69 | 4.23 | 4.56 | 4.16 | | 15 | 6.20 |
| 65 | 4.85 | 4.37 | 4.69 | 4.29 | | 16 | 5.85 |
| 66 | 5.02 | 4.51 | 4.83 | 4.42 | | 17 | 5.55 |
| 67 | 5.20 | 4.66 | 4.98 | 4.55 | | 18 | 5.27 |
| 68 | 5.39 | 4.83 | 5.13 | 4.69 | | 19 | 5.03 |
| 69 | 5.60 | 5.00 | 5.29 | 4.85 | | 20 | 4.81 |
| 70 | 5.82 | 5.19 | 5.45 | 5.00 | | | |
| 71 | 6.05 | 5.39 | 5.62 | 5.17 | | | |
| 72 | 6.30 | 5.61 | 5.80 | 5.35 | | | |
| 73 | 6.57 | 5.85 | 5.97 | 5.53 | | | |
| 74 | 6.85 | 6.11 | 6.15 | 5.72 | | | |
| 75 | 7.15 | 6.39 | 6.33 | 5.92 | | | |
| 76 | 7.47 | 6.69 | 6.52 | 6.12 | | | |
| 77 | 7.82 | 7.01 | 6.70 | 6.32 | | | |
| 78 | 8.19 | 7.36 | 6.88 | 6.53 | | | |
| 79 | 8.59 | 7.74 | 7.06 | 6.74 | | | |
| 80 | 9.01 | 8.16 | 7.24 | 6.95 | | | |
| 81 | 9.47 | 8.60 | 7.41 | 7.15 | | | |
| 82 | 9.95 | 9.09 | 7.57 | 7.35 | | | |
| 83 | 10.47 | 9.61 | 7.73 | 7.54 | | | |
| 84 | 11.02 | 10.18 | 7.88 | 7.71 | | | |
| 85 | 11.61 | 10.79 | 8.02 | 7.88 | | | |
| 86 | 12.24 | 11.45 | 8.14 | 8.03 | | | |
| 87 | 12.91 | 12.16 | 8.26 | 8.17 | | | |
| 88 | 13.61 | 12.91 | 8.37 | 8.29 | | | |
| 89 | 14.37 | 13.71 | 8.47 | 8.40 | | | |
| 90 | 15.17 | 14.55 | 8.55 | 8.50 | | | |

Rates for ages not shown will be furnished upon request. These monthly income factors are based on the 2000 Annuity Mortality Table and interest at the rate of 1.5% per year. Rates shown above are on a per thousand basis.

INDEX

SUBJECT                                                                                                PAGE

AGE, MISSTATEMENT OF ..................................................................................................4
BENEFICIARY ...................................................................................................................3
CONTESTABILITY ...........................................................................................................3
CONTRACT, THE .............................................................................................................3
EFFECTIVE DATE OF COVERAGE ...............................................................................4
EXCHANGE OPTION PROVISIONS ...............................................................................5
GRACE PERIOD ...............................................................................................................5
NON-PARTICIPATING ......................................................................................................5
OWNER ...............................................................................................................................3
PAYMENTS BY US ...........................................................................................................5
PAYMENT OPTION PROVISIONS ..................................................................................7
POLICY DATES AND ANNIVERSARIES ......................................................................3
PREMIUM ADJUSTMENTS .............................................................................................4
PREMIUMS, PAYMENT OF .............................................................................................4
REINSTATEMENT ............................................................................................................5
RIGHT TO ASSIGN OR GIVE AWAY ...........................................................................4
SUICIDE .............................................................................................................................3
TRUST ................................................................................................................................4


SCHEDULE AND TABLES

POLICY DATA....................................................................................................................2
SCHEDULE OF MAXIMUM PREMIUM BY YEAR.......................................................2

This Page has been left blank.

RELIASTAR LIFE INSURANCE COMPANY

20 Washington Avenue South P.O. Box 20    Minneapolis, Minnesota 55440

TERMINAL ILLNESS ACCELERATED BENEFIT RIDER

NOTICE. Benefits advanced under this Rider may or may not be taxable. As with all tax matters, you should consult a personal tax advisor to assess the impact of this benefit.

## THE CONTRACT

RIGHT TO EXAMINE RIDER. This Rider may be returned within 20 days after its receipt to the agent through whom this Policy was purchased or to our Home Office. Upon cancellation, it will be void from the beginning.

CONSIDERATION. This Rider is attached to and is a part of this Policy. Unless changed by this Rider, all provisions, exclusions, and limitations of this Policy remain the same and apply to this Rider. There is no charge for this Rider prior to the time Rider benefits are applied for. It is issued in consideration of the application.

RENEWABILITY. We will not cancel this Rider. Unless you request termination of this Rider, it will remain in force as long as this Policy remains in force.

## DEFINITIONS

WE, OUR, US, YOU, YOUR. As used in this Rider, the terms "we", "our", and "us" refer to ReliaStar Life Insurance Company. The terms "you" and "your" refer to the Policy Owner.

EFFECTIVE DATE. The Effective Date of this Rider will be as follows:

1. For a Rider requested in the original application for this Policy, the Effective Date will be the Policy Date.

2. For a Rider requested after the Policy Date, the Effective Date will be the date shown on a supplement to the Policy Data page.

3. For any insurance that has been reinstated, or for any increase in coverage, the Effective Date of such coverage under this Rider will be the effective date of such coverage described in this Policy.

ELIGIBLE DEATH BENEFIT. At any point in time, the Eligible Death Benefit for the Insured is the Death Benefit or Amount of Insurance on the life of the Insured provided by this and any other Policy in force with us and owned by you. Any increase in the Death Benefit or Amount of Insurance will automatically be reflected in the calculation of the Eligible Death Benefit at the time the increase or decrease becomes effective.

BENEFIT RATIO. The Benefit Ratio is the result of dividing (a) by (b) where:

(a) is the requested portion of the Eligible Death Benefit; and

(b) is the Death Benefit or Amount of Insurance under this Policy.

94060-1                                                    11/15/90

DEFINITIONS (continued)

ADMINISTRATIVE EXPENSE CHARGE. The Administrative Expense Charge will be the greater of $300 or 3% of the requested portion of the Eligible Death Benefit.

PHYSICIAN. Physician means an individual who is licensed to practice medicine and treat illness or injury in the state in which treatment is received and who is acting within the scope of that license. Physician does not include:

1.   the Insured;

2.   the Owner;

3.   a person who lives with the Insured or Owner; or

4.   a person who is part of the Insured's or Owner's Immediate Family.

IMMEDIATE FAMILY. Immediate Family means a spouse, child, brother, sister, parent, or grandparent of the Insured or the Owner, or a child, brother, sister, parent, or grandparent of the spouse of the Insured or Owner.

TERMINAL ILLNESS. Terminal Illness is a noncorrectable medical condition that, with reasonable medical certainty, will result in the death of the Insured in less than 6 months from the date of the Physician Statement.

PHYSICIAN STATEMENT. A Physician Statement means a statement acceptable to us, signed by a Physician, which:

1.   give the Physician's diagnosis of the Insured's noncorrectable medical condition;

2.   states that, with reasonable medical certainty, the noncorrectable medical condition will result in the death of the Insured in less than 6 months from the date of the Physician Statement, assuming the exercise of ordinary and reasonable medical care, advice and treatment available in the same or similar communities.

BENEFITS

DESCRIPTION OF BENEFITS. If the Insured develops a Terminal Illness, you may request an acceleration of a portion of the Eligible Death Benefit. The Eligible Death Benefit will be determined as of the date the Notice of Claim is received at our Home Office. The maximum amount of Eligible Death Benefit which you may request is shown on the Policy Data page. However, in no case may the amount requested exceed the Death Benefit or Amount of Insurance on the life of the Insured provided by this Policy.

The requested portion of the Eligible Death Benefit will be subject to the following adjustments:

(a)   An actuarial discount will apply to the requested portion of the Eligible Death Benefit. This discount reflects the early payment of amounts held under the Policy. It will be based on an annual interest rate which has been declared by us and the then current premium or cost of insurance rate, both of which are in effect as of the date your Notice of Claim is received at our Home Office.

(b)   If, on the date we approve your request, there is a Policy loan outstanding on this Policy, a reduction to the requested portion of the Eligible Death Benefit will apply. This reduction serves to repay a portion of the Policy loan and is determined as follows: (Outstanding Policy Loan) x (Benefit Ratio)

BENEFITS (continued)

DESCRIPTION OF BENEFITS.  (continued)

    (c)  A deduction will be made for the Administrative Expense Charge.

The actual payment to you will be equal to the requested portion of the Eligible Death Benefit minus (a), minus (b), and minus (c) above.  This is your Accelerated Benefit Payment.  Once an Accelerated Benefit Payment has been made, no future Accelerated Benefit Payments will be made.

WAIVER OF PREMIUMS OR COST OF INSURANCE.  If all of the following occur:

    1.  a Waiver of Premium Rider or a Waiver of Cost of Insurance Rider on the Insured is attached to this Policy;

    2.  that Rider is in force at the time of the claim for this Rider's benefits; and

    3.  Proof of Terminal Illness is submitted and approved;

then for purposes of any Waiver of Premium Rider or for purposes of any Waiver of Cost of Insurance Rider that is in force, the Insured will be deemed to be Totally Disabled for as long as the most recently provided Proof of Terminal Illness continues to apply.

CONDITIONS FOR THE ACCELERATED BENEFIT PAYMENT.  The Accelerated Benefit Payment is subject to the following conditions:

    1.  This Policy must be in force other than as Extended Term Insurance or Reduced Paid-Up Insurance.

    2.  There must be at least two years remaining from the date the Notice of Claim is received at our Home Office to the expiration or maturity date of the Policy.

    3.  During the lifetime of the Insured, we must receive Proof of Terminal Illness that is acceptable to us.

    4.  No prior request for an Accelerated Benefit Payment may have been made under this or any other Terminal Illness Accelerated Benefit Rider issued by us with respect to the Insured.  If more than one request is received at the same time, the Insured will determine which request is deemed to have been received first and the other requests will be returned.

    5.  We must receive a consent form from all irrevocable beneficiaries, if any, and all assignees, if any.  We also reserve the right to require a consent form from a spouse, the Insured, other beneficiaries, or any other person if, in our discretion, such person's consent is necessary to protect our interests.

    6.  This Rider provides for the advance of a portion of the Eligible Death Benefit of this Policy.  This is not meant to cause involuntary access to proceeds ultimately payable to the beneficiary.  Therefore, this benefit is not available:

        (a)  if either you or the Insured is required by law to use this benefit to meet the claims of creditors, whether in bankruptcy or otherwise; or

        (b)  if either you or the Insured is required by a government agency to use this benefit in order to apply for, obtain, or otherwise keep a government benefit or entitlement.

BENEFITS (continued)

LIMITATIONS.  No benefit will be provided by this Rider if Terminal Illness results from intentionally self-inflicted injuries.

ADJUSTMENTS TO THE POLICY

After an Accelerated Benefit Payment is made, the Policy will remain in force subject to the following adjustments:

1.  The Policy's Death Benefit or Amount of Insurance, its Guaranteed Cash Value, if any, its Cash Value, if any, and its required Premium, if any, will be reduced by the Benefit Ratio.

2.  Any outstanding Policy loan will be reduced by the portion of the Policy loan repaid as specified in the Description of Benefits provision of this Rider.

3.  We will mail to you, for attachment to the Policy, a new Policy Data page resulting from the Accelerated Benefit Payment.

CLAIMS

NOTICE OF CLAIM.  Written Notice of Claim may be given to us any time after the date the Insured develops a Terminal Illness as defined in this Rider.  Notice of Claim must identify the Insured and be sent to us at our Home Office or given to one of our agents.

CLAIM FORMS.  We will send claim forms to the Owner when Notice of Claim is received.  If we do not mail the claim form within 15 days, the Owner will be considered to have complied with the Proof of Terminal Illness requirements by giving us a Physician Statement acceptable to us and a written statement of the nature and extent of the Terminal Illness.

PROOF OF TERMINAL ILLNESS.  Written proof of the Insured's Terminal Illness must be received by us before we will make a Benefit payment.  This proof will include a properly completed claim form and a Physician Statement acceptable to us.  We may request additional medical information from the Physician submitting the statement.  We will not unreasonably withhold our acceptance of Proof of Terminal Illness.

PHYSICAL EXAMINATION.  At our expense, we reserve the right to have a Physician of our choosing examine the Insured prior to making an Accelerated Benefit Payment.  In the event that the Physician we choose provides a different diagnosis of the Insured's medical condition, we reserve the right to rely on the Statement from the Physician of our choosing for claim purposes.

TIME OF PAYMENT OF CLAIMS.  All benefits described in this Rider will be available as soon as we receive satisfactory Proof of Terminal Illness.

PAYMENT OF CLAIMS.  All Rider benefits will be paid to the Owner.  Upon the death of the Owner, we will pay the benefits to the estate of the Owner.

94060-2

11/15/90

## GENERAL PROVISIONS

**REPRESENTATIONS AND CONTESTABILITY.** All statements made in the application for this Rider by or on behalf of the Insured will, in the absence of fraud, be deemed representations and not warranties. The validity of this Rider with respect to the Insured will not be contestable after it has been in force for 2 years from its issue date during which time the Insured was living.

Any increase in coverage effective after the Policy Date or any reinstatement will not be contestable after such increase or reinstatement has been in force for 2 years from its effective date during which time the Insured was living. A contest will be based only on the application for the increase or reinstatement.

**REINSTATEMENT.** If this Policy is reinstated, this Rider will also be reinstated.

**INCORRECT AGE OR SEX.** If there is an error in the age or sex of the Insured, the benefits available under this Rider will be the amount that would be available based on the Death Benefit amount that this Policy would have provided at the correct age or sex.

**CONFORMITY WITH STATE STATUTES.** If any provision of this Rider is in conflict with the laws of the state in which the Insured resides on the Effective Date of this Rider, the provision is automatically amended to meet the minimum requirements of such laws.

**TERMINATION OF RIDER.** This Rider terminates:

    1.   on the day we receive written request of the Owner;

    2.   upon termination of this Policy; or

    3.   when this Policy reaches its Maturity Date, if any.

Coverage will terminate at 12:00 midnight on any given termination date.

*Joy N. Benner*
Secretary

94060-3                                                                                                      11/15/90

This Page has been left blank.

Life

ReliaStar Life Insurance Company
Administrative Office:    2000 21st Ave NW
                         Minot ND 58703-0890

**Your Future. Made Easier.**[SM]

| | |
|---|---|
| Policy Number | : AD20140138 |
| Insured Name | : Walter W Lane |

I amend my Application for Life Insurance dated February 13, 2009 as follows. I understand and agree that this is part of my application and will be considered part of my policy/contract.

A. Product Information           Initial Term Period:              10 Year

G. Replacement Information      Do you have existing or pending life insurance      Company - West Coast Life
                               policy or annuity contract? Proposed Insured:       Policy # - Pending - Will place only one
                                                                                   policy
                                                                                   Amount - $2,040,000

I affirm that since my application to ReliaStar Life Insurance Company
1. I have not consulted or been prescribed for, by any physician or surgeon;
2. I have not made an application for insurance to any other Company;
3. There has been no change in my occupation, residence, or family history;
4. I have suffered no illness or injury;
5. No company or association has taken any adverse action with reference to my insurability; and
6. To the best of my knowledge and belief, I am now in good health.

I UNDERSTAND THAT THE POLICY HAS BEEN ISSUED WITH A HIGHER THAN STANDARD PREMIUM. THE PREMIUMS ARE SET IN THE POLICY INFORMATION AT THE FRONT OF THE POLICY. THE PREMIUM INCLUDES THE STANDARD RATE AS WELL AS A TABLE 2 RATING OF 150%. I AGREE TO ACCEPT COVERAGE UNDER THE POLICY AT THAT RATE.

[Proposed] Insured Signature _____    Date _____

Owner Signature _____    Date _____

139726                                                          Order # 139726 06/22/2006

**TERM APPLICATION**
ReliaStar Life Insurance Company, Minneapolis, MN

## A. PRODUCT INFORMATION

1. Initial Term Period:  ☐ 10 Year  ☑ 15 Year  ☐ 20 Year  ☐ 30 Year  ☐ Other _____

2. Face Amount $ **2,040,000**

3. Location of Sale (city, state) **TAMPA** , **FL** _____ Date **2/13/09**

## B. RIDER INFORMATION  Select only if available with product. Not all riders are approved in all states.

☐ Waiver of Premium Rider

☐ Children's Insurance Rider (Complete Children's Insurance Rider Application.) $ _____

☐ Other_____ $ _____

## C. PROPOSED INSURED INFORMATION

1. First Name **WALTER** MI **W** Last Name **LANE**

2. Date of Birth  **REDACTED** Birth State and Country **KANSAS City**, **MO**

3. Sex ☑ M ☐ F  Marital Status: ☑ Married  ☐ Separated  ☐ Divorced  ☐ Single  ☐ Widowed

4. SSN/Government Issued ID# **REDACTED** Phone

5. Driver's License Number and State  **REDACTED**

6. Residence Address  **REDACTED**
   (P.O. Boxes are not permitted, other than APO/FPO)    City    State    ZIP

7. Is the Proposed Insured a U.S. Citizen? (If "No", complete the Foreign Travel and Residence Questionnaire.)........ ☑ Yes ☐ No

8. Occupation (Include Duties) **Retired Physician**

9. Employer **GMG Florida Weathers et, Inc** Employer Phone **813-963-0235**

10. Employer Address **15320 Amberly Dr.** **Tampa**, **FL** **33647**
    City    State    ZIP

11. Proposed Insured's Annual Earned Income **0** Annual Interest & Other Income **250,000**

12. Total Net Worth **Household NETWORTH $4,500,000**

13. Has the Proposed Insured ever used tobacco or nicotine products of any type? ........................................ ☑ Yes ☐ No
    If "Yes", indicate Type **Cigarettes** Amount & Frequency **1/2 pack per day** Month/Year Last Used **Quit 50yrs ago and, only for 3 yrs.**

## D. SECONDARY ADDRESSEE

Florida law allows the applicant to name a secondary addressee to receive certain notices. Any secondary addressee named will be provided with a notice of any lapse that may occur after the Insured reaches age 64 or older.

1. First Name _____ MI _____ Last Name _____

2. Residence Address _____
   (P.O. Boxes are not permitted, other than APO/FPO)    City    State    ZIP

## E. PROPOSED INSURED PERSONAL HISTORY

1. Has the Proposed Insured ever declared bankruptcy? (If "Yes", provide details in chart below, including
   date discharged)............................................................................................................ ☐ Yes ☑ No

2. Is the Proposed Insured a member of the armed forces, including the Reserves or National Guard?
   (If "Yes", complete Military Questionnaire.).................................................................... ☐ Yes ☑ No

136899    Page 1 of 5    Order #136899  FL 03/20/2007

3. Has the Proposed Insured ever traveled or resided outside the United States or Canada (other than a two week or less vacation to Western Europe or the Caribbean)? (If "Yes", complete the Foreign Travel and Residence Questionnaire.)........................................ ☐ Yes ☒ No

4. Has the Proposed Insured ever flown a plane (other than as a commercial pilot), raced motor boats, automobiles or motorcycles, or participated in sky-diving, hang-gliding or other hazardous activities? (If "Yes", complete the appropriate hazardous activities questionnaire.)........................................ ☐ Yes ☒ No

5. Except for traffic violations, has the Proposed Insured been the subject of or convicted in a criminal proceeding? (If "Yes", provide details in chart below.)........................................ ☐ Yes ☒ No

6. Has the Proposed Insured in the last five years had any motor vehicle accidents, alcohol or drug related convictions, or other moving violations while operating a motor vehicle? (If "Yes", provide details in chart below.)............. ☐ Yes ☒ No

For any "Yes" answer to questions 1, 5 or 6, please record information in the chart below.

| Ques. # | Explanation |
|---------|-------------|
|         |             |
|         |             |
|         |             |

## F. BENEFICIARY INFORMATION

Total percentage of primary beneficiary share must equal 100%. Total percentage of contingent beneficiaries' shares must equal 100%. Please use whole percents. If no percentages are listed, beneficiaries' shares will be distributed equally; however, partial percentages are not allowed so the first listed beneficiary will receive the largest whole percentage.

| Name (First, MI, Last) | DOB | Relationship | % | Beneficiary Type |
|------------------------|-----|--------------|---|------------------|
| GMS Florida Westcoast Inc. | — | Past Employer | 100% | ☒ Primary ☐ Contingent |
|  |  |  |  | ☐ Primary ☐ Contingent |

If beneficiary is a Trust or Corporation, provide name and date of trust agreement and state of incorporation.

Name of Trust/Corporation GMS Florida Westcoast Inc.  Date of Trust ____  State of Incorporation ____

## G. OWNER (PAYOR) Complete only if owner is to be other than Proposed Insured.

1. Owner is: ☐ Individual ☒ Corporation ☐ Trust ☐ Sole Proprietorship ☐ Partnership ☐ Other _____

2. Full Name GMS Florida Westcoast Inc

3. Relation to Proposed Insured Past Employer

4. Residence Address 15320 Amberly Dr. Tampa FL 33647
   (P.O. Boxes are not permitted other than APO/FPO)    City    State    ZIP

5. Billing Address (Same)
                              City    State    ZIP

6. Phone 813-963-0235    SSN/TIN or Government Issued ID# GMS TAX ID# 593577531

7. Driver's License Number/State (individual only) _____    Date of Birth _____

8. Trust Contact Name _____    Date of Trust _____

9. Type of Trust: ☐ Revocable ☐ Irrevocable   Purpose of the Trust _____

10. State of Incorporation _____    Name of Trustee/Corporate Officer _____

11. Does the above trustee have sole authority to act on behalf of the Trust? ........................................ ☐ Yes ☐ No
    (If "No", list the names & addresses of all trustees on a separate page, and obtain signatures from all trustees.)

## H. REPLACEMENT INFORMATION  (Applies to both Owner and Proposed Insured.)

If you intend to replace existing coverage, tell the Agent of your intention and answer "Yes" to the replacement questions (#2 and #3 below). State law may require the Agent to give you information that will help you compare the policy you are applying for with the policy you intend to replace. If you are undecided about keeping existing coverage, indicating an intention to replace existing coverage may help you get the information you need to make a decision. If you do replace existing coverage, the new policy may contain, among other things, new suicide exclusions and contestability periods. Ask the Agent if you are unsure.

136899                              Page 2 of 5                              Order #136899 FL 03/20/2007

| | | | | Proposed Insured | | Proposed Owner | |
|---|---|---|---|---|---|---|---|
| | | | | Yes | No | Yes | No |
| 1. | Do you have an existing or pending life insurance policy or annuity contract? *(If "Yes", provide details below. Complete state required replacement form for Model Replacement Regulation States ONLY.)* | | | ☐ | ☑ | ☐ | ☐ |
| 2. | Are you considering using funds from an existing policy or contract to pay premiums on the policy you are applying for? *(If "Yes", complete state required replacement form and provide details below.)* | | | ☐ | ☑ | ☐ | ☐ |
| 3. | Have you discontinued making premium payments, surrendered, forfeited, assigned to the insurer, or otherwise terminated an existing policy or contract or are you considering doing so? *(If "Yes", complete state required replacement form and provide details below.)* | | | ☐ | ☑ | ☐ | ☐ |

| Name | Insurance Company (Do not include group policies.) | Contract / Policy # | Account Value / Amount of Coverage | Date Issued |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |

## I.  PAYMENT INFORMATION

1. Initial Payment:   ☐ Check   ☑ COD   ☐ Credit Card  *(Where available and selected use #4 Credit Card Information.)*
   ☐ Military Allotment *(Active or retired military members must complete Military Allotment form and return to the Military finance department.)*
   ☐ Civil Service Allotment *(Federal Civil Service Application Checklist, Bank Allotment Authority and Employer 1199 for Direct Deposit must be completed.)*

2. Initial Payment Amount $_____–0–_____   Subsequent Payment Amount $_____

3. Frequency of Subsequent Payments:
   ☑ Annual   ☐ Semi-Annual   ☐ Quarterly   ☐ Monthly *(Complete EFT form-Appendix E)*

4. Credit Card Payment *(When available):*   ☐ Visa   ☐ MasterCard   ☐ Discover   ☐ American Express

   Full Name *(Print as it appears on card)* _____

   Card Number _____ N/A _____ Expiration Date _____ N/A

5. Would you like to backdate your policy to save age? *(If "Yes", see backdating disclosure, section M.)* .............. ☐ Yes ☐ No

## J.  MEDICAL TRANSFER STATEMENT  *(Complete when submitting medical examinations from another insurance company)*

1. Name of Insurance Company *JOHN HANCOCK LIFE*   2. Date of Examination *1/15/09*
3. To the best of your knowledge and belief, are the statements in the examination true and complete today? ........................................................................................................... ☑ Yes ☐ No
4. Have you consulted a medical doctor or other practitioner since the examination indicated in question 2 above? *(If "Yes", please provide details below).* .............................................. ☐ Yes ☑ No

## K.  REPLACEMENT VERIFICATION  *(For Agent use ONLY)*

1. To the best of your knowledge and belief, will coverage under an existing life insurance policy or annuity contract be replaced, lapsed, surrendered, or borrowed against in relation to this application for insurance? *(If "Yes", submit state required replacement forms.)* .............................................. ☐ Yes ☑ No
2. Is the Owner or the Proposed Insured considering using funds from an existing policy or contract to pay premiums on the policy being applied for? *(If "Yes", complete state required replacement forms and provide details below.)* ........................................................................... ☐ Yes ☑ No
3. Has the Owner or the Proposed Insured discontinued making premium payments, surrendered, forfeited, assigned to the insurer, or otherwise terminated an existing policy or contract or are they considering doing so? *(If "Yes", complete state required replacement form and provide details below).* .............. ☐ Yes ☑ No

Company _____   Policy # _____   Amount _____

| 136899 | Page 3 of 5 | Order #136899 FL 03/20/2007 |
|---|---|---|

## N. AUTHORIZATION AND ACKNOWLEDGEMENT

The undersigned Owner and Proposed Insured declare: By completing this life insurance application, I understand that I am applying for life insurance coverage issued by ReliaStar Life Insurance Company, referred to as the "Company." I understand and consent that this application and information obtained pursuant to this authorization may be used by the Company to evaluate my eligibility for life insurance. For underwriting and claims purposes, I authorize any physician, medical practitioner, hospital, clinic or medically related facility, insurance or reinsuring company, Medical Information Bureau, Inc. ("MIB"), any consumer reporting agency, or any other organization to release to the Company or their authorized representatives (including any consumer reporting agency) acting on their behalf, ALL INFORMATION requested by the Company about me and any person who are to be insured. This includes but is not limited to: Any medical information available as to diagnosis, treatment and prognosis with respect to any physical or mental condition and treatment of me or my minor children who are to be insured; Prescription drug records and related information maintained by physicians, pharmacy benefit managers and other sources; Any non-medical information about me or my minor children who are to be insured. By this authorization, each physician, medical practitioner, hospital, clinic or medically related facility contacted by the Company is instructed to provide the entire medical record in its possession concerning me or any minor children who are to be insured.

- I give my permission to the Company to collect consumer or investigative consumer reports about these same persons.
- I give my permission to the Company and other insurance companies affiliated with the Company to collect any and all medical record information for the purposes described in this form. I know that any medical records, including any alcohol or drug abuse information, may be protected by Federal Regulations – 42CFR Part 2. I may revoke this permission and authorization as it applies to any information protected by 42CFR Part 2 or by applicable state law at any time by mailing this written revocation to the Company at the address on the Consumer Privacy Notice, but not to the extent action has been taken. I understand that the release of medical records will not be requested with respect to tests performed to determine the presence of the Human Immunodeficiency Virus (HIV) antibody.

For any life insurance application or other insurance transaction that I may have with the Company, I specifically consent that some or all of the information obtained by this authorization may be sent to MIB, reinsurers, the agent who solicited my application and his or her principals, employees

or contractors who process transactions regarding any insurance coverage I may have applied for or have with the Company or affiliated companies. I understand the information obtained by use of the Authorization will be used by the Company to determine eligibility for insurance and eligibility for benefits under an existing policy.

- I understand that I may request to be interviewed if an investigative consumer report is prepared. You may contact me between the hours of _____ am/pm and _____ am/pm. My daytime phone number is (___) ___
- I know that I have a right to receive a copy of this form and a photocopy will be as valid as the original.
- This form will be valid for 24 months from the date shown below.
- I acknowledge receipt of the following notices: Notice Regarding Consumer Reports; Notice Regarding MIB; and Notice Regarding Information Practices.

VERIFICATION:
Each of the undersigned also declares that:

A. I have read the statements and answers given in this application and affirm that they are true and complete to the best of my knowledge and belief. I understand that the Company may seek to rescind or cancel the insurance coverage if there is any material misrepresentation.

B. This application consists of Part I, appendices and supplemental questionnaires, and will be the basis for any coverage issued on this application. Any coverage issued on this application will take effect only upon satisfaction of all of the Company's requirements, except as otherwise provided in the Conditional Receipt, if issued, with the same date as this application. Except where permitted expressly by statute or regulation, no agent or medical examiner has the authority to waive the answer to any question in the application, to pass on insurability, to make or alter any contract or waive any of the Company's rights or requirements. No change in the amount, classification, age at issue, plan of insurance or benefits on this application shall be effective unless agreed to in writing by the Proposed Insured and Owner.

C. I certify, under penalty of perjury, that my Social Security/tax identification number(s) is(are) shown and is(are) correct and that I am not subject to back-up withholding.

All completed materials must be sent to the Administrative Office at: ING Service Center, P.O. Box 5052, Minot, ND 58702-5052 or faxed to 866-308-7743.

Any person who knowingly and with intent to injure, defraud, or deceive any insurer, files a statement of claim or an application containing false, incomplete, or misleading information is guilty of a felony of the third degree.

X Signature of Proposed Insured (if age 15 or older) X: _Walter W. Acme_    Date _2/13/09_

Signed at: (city/state) _Tampa, FL_    Date _2/13/09_

X Signature of Owner (if other than the Proposed Insured) _(signature)_    Date _2/13/09_

Print Owner/Trustee Name _Mark Weissman, MD_

X Signature of Parent or Guardian (if the Proposed Insured is a minor)

X Signature of Writing Agent _(signature)_

Print Writing Agent Name _MICHAEL J FOGLE_

Writing Agent State Lic. # _A081676_    Writing Agent # _131 D038_

Name of Agent

Agent Florida Lic. #    Agent #

| 136899 | Page 5 of 5 | Order #136899  FL  03/20/2007 |

03/17/2009 TUE 13:39  FAX 813 866 8695 GMS Fl West Coast Inc.    002/003

03/15/2009  20:48    8139619483                              PAGE  01/01

Mar 17 2009 2:28PM  HP LASERJET FAX                          p.1

AD 20 140 136

## SUPPLEMENT TO APPLICATION
## FOREIGN TRAVEL AND RESIDENCE QUESTIONNAIRE

☑ Reliastar Life Insurance Company, Minneapolis, MN
☐ Security Life of Denver Insurance Company, Denver, CO
For Policyowner Service Use Only:
☐ ING USA Annuity and Life Insurance Company, Des Moines, IA
☐ Midwestern United Life Insurance Company, Fort Wayne, IN

Administrative Office
for all Companies:
ING Service Center
2000 21st Ave. NW
Minot, ND 58703

Name of Proposed Insured  Walter Lane                Date of Birth  4/9/1954

1. Country of Origin  USA            Current Citizenship  US National

2. Date of entry into the United States  Born is 45p        N/A

3. Visa type, symbol, number, and expiration date    N/A

4. Do you intend to remain permanently in the USA?        ☑ Yes  ☐ No

5. List immediate family members by relationship, age, and citizenship.

Within the USA  LNP,  Jane Lane,  63,  US National

Outside the USA  None

6. List your assets/property both within and outside the USA  None  outside  US

7. Have you ever traveled or resided outside the USA? ........................  ☑ Yes  ☐ No
If "Yes", provide details for each country to include specific locations, departure dates, duration and purpose of each stay
Royal princess cruise  left Tampa, FL 3/16/08  for vacation  returned to
FL 3/31/08  It was an Amazon River cruise, St Lucia, Tobago, Santarem Brazil,
Manaus, Brazil/Brays

I have read the above questions and answers. I affirm that they are complete and true to the best of my knowledge and belief. I
agree that this questionnaire is a part of my application for life insurance.
NOTICE: Any person who knowingly and with intent to injure, defraud or deceive any insurance company, files an
application, statement or claim containing false, incomplete or misleading information may be guilty of a felony of
the third degree.

Signature of Applicant  Walter Lane  MD              Date 3/17/09
Signature of Proposed Insured (Insured if other than applicant)    Date
Agent's Signature                                        Date 3/17/09

126464 (1/04)                                            04/14/2004  Florida

This Page has been left blank.

## INDETERMINATE PREMIUM TERM LIFE INSURANCE POLICY TO AGE 95
## WITH EXCHANGE OPTIONS AND PREMIUM ADJUSTMENT PROVISION
## NON-PARTICIPATING

### IMPORTANT - READ YOUR POLICY CAREFULLY

### YOUR POLICY IS A VALUABLE ASSET
### DO NOT ALLOW IT TO END WITHOUT CONSULTING US

This is a Non-Participating Indeterminate Premium Term Life Insurance Policy to Age 95 with Exchange Options and a Premium Adjustment provision. The Face Amount remains unchanged as long as the Policy is in force. Premiums are payable to age 95, or until the Insured's death, whichever comes first. During the Initial Term Period, premiums are level and are based on the plan elected by you at the time of application. After the Initial Term Period, premiums may increase but will never be greater than those shown in the Schedule of Maximum Premium by Year.

**Notice** To make a claim or exercise your rights under this Policy, please write to us at the Administrative Office address below and include your policy number:

### RELIASTAR LIFE INSURANCE COMPANY
### A Stock Company

**Home Office:**
20 Washington Ave South
PO Box 20
Minneapolis, MN 55440

**Administrative Office:**
2000 21st Ave NW
Minot, ND 58703-0890

1177R

1177rb 01/2004

## Attachment 2

ReliaStar Life Insurance Company
ING Service Center
PO Box 5044
Minot ND  58702-5044

May 8, 2009

**l..ll..ll..ll..l..l..ll.l.ll..l.ll..ll.l.l.l.l**
**\*\*\*\*\*\*\*\*\*\*AUTO\*\*MIXED AADC 500 AUTO**
**000000804 000000003**
GMS FLORIDA WESTCOAST INC.
C/O C/O Kimberly Thornton
15320 AMBERLY DR STE A
TAMPA FL  33647-1647

Re: Policy #:  AD20140138
    Owner:  GMS Florida Westcoast Inc.      Insured:     Walter W Lane

Dear GMS Florida Westcoast Inc.:

As requested, we've updated your address in our system. All future communication will be sent to your new address. For your protection, this letter is also being sent to your previous address to confirm the change.

We appreciate the trust you've placed in the ING family of companies to help you meet your financial objectives. If you have any questions , please contact your agent, registered representative or the ING Service Center during our business hours of Monday - Friday, 7:00 a.m. to 7:00 p.m. CST.

Sincerely,

Steve Block
Contact Center

Questions?   Call: 800-654-5375
              Fax: 877-788-6305



ReliaStar Life Insurance Company
ING Service Center
PO Box 5044
Minot ND 58702-5044

May 8, 2009

**********AUTO**MIXED AADC 500 AUTO
000000805 000000003
***

15320 AMBERLY DR
TAMPA FL 33647-1647

Re: Policy #: AD20140138
    Owner:   GMS Florida Westcoast Inc.            Insured:      Walter W Lane

Dear GMS Florida Westcoast Inc.:

As requested, we've updated your address in our system. All future communication will be sent to your new address. For your protection, this letter is also being sent to your previous address to confirm the change.

We appreciate the trust you've placed in the ING family of companies to help you meet your financial objectives. If you have any questions , please contact your agent, registered representative or the ING Service Center during our business hours of Monday - Friday, 7:00 a.m. to 7:00 p.m. CST.

Sincerely,

Questions?   Call: 800-654-5375
             Fax: 877-788-6305



Insurance products are issued by ReliaStar Life Insurance Company, a member of the ING family of companies.

# Attachment 3

ReliaStar Life Insurance Company
ING Service Center
PO Box 5044
Minot ND  58702-5044

June 3, 2009

\|..ll...ll..ll...l.ll...l..ll.lll...l..ll...ll..l..l.l.l.l.l

*********AUTO**MIXED AADC 500 AUTO
000000816 000000003
GMS FLORIDA WESTCOAST INC.
C/O C/O Kimberly Thornton
15320 AMBERLY DR STE A
TAMPA FL  33647-1647

Re: Policy #:  AD20140138
     Owner:   GMS Florida Westcoast Inc.        Insured:     Walter W Lane

Dear GMS Florida Westcoast Inc.:

As requested, we've updated your address in our system. All future communication will be sent to your new address. For your protection, this letter is also being sent to your previous address to confirm the change.

We appreciate the trust you've placed in the ING family of companies to help you meet your financial objectives.  If you have any questions , please contact your agent, registered representative or the ING Service Center during our business hours of Monday - Friday, 7:00 a.m. to 7:00 p.m. CST.

Sincerely,

Chrisanne Nelson
Entry-AS Core Team Level 2

Questions?   Call: 800-654-5375
           Fax:  877-788-6305



      Insurance products are issued by ReliaStar Life Insurance Company, a member of the ING family of companies.

## Attachment 4

**VOYA** FINANCIAL™

ReliaStar Life Insurance Company
Customer Service
PO Box 5044
Minot, ND 58702-5044

March 06, 2015

**ANNUAL PREMIUM NOTICE**

000644
GMS FLORIDA WESTCOAST INC.
C/O C/O Kimberly Thornton
15320 Amberly Dr Ste A
Tampa FL 33647-1647

| Amount Due | |
|---|---|
| Premium Due: | $97,714.80 |
| Due Date: | 3/26/2015 |

RE: Policy # AD20140138 on Walter W Lane

Please use the detachable section below to submit your premium payment.

**Important Notice:** Your grace period expires on 05/01/2015. If the payment is not received by the due date or any applicable grace period, the coverage may lapse, depending on the terms of your policy. If coverage lapses, the policy and all payments thereon will become forfeited and void, except as to the right, if any, to a surrender value, paid-up policy, or extended term insurance, as provided in your policy. Please refer to your policy for additional information regarding coverage, lapse, grace period and policy provisions.

The Company does not accept premium payments or loan repayments using money orders for amounts over $5,000 and may reject payments made by Cashier's Checks, Bank Drafts, and Treasurer's Checks.

Premiums paid more frequently than annually result in higher total annual premiums for the same coverage, which is described in more detail in the policy.

Thank you.

Questions? Call: 800-654-5375. Keep this section for your records. Please return the section below with payment.



20001 5/05/2006



ReliaStar Life Insurance Company
GMS FLORIDA WESTCOAST INC.
C/O C/O Kimberly Thornton
15320 Amberly Dr Ste A
Tampa, FL 33647-1647

Annual Premium Notice
Premium Due: $97,714.80
Due Date:    3/26/2015

RE: Policy # AD20140138 on Walter W Lane

Please include the policy number on your check and make it payable to ReliaStar Life Insurance Company.

☐ If your address has changed, please check this box and complete the form on the back of this coupon.

1247474747471114393738413738404520150326000000977148 01

**Change of Address**
Please provide correct address and sign

_____

_____

_____

_____

_____
Signature

Change of address for:  ☐ Owner
                   ☐ Payor
                   ☐ Owner and Payor
                   ☐ Other _____

:6 0 6 8 2 0 0 8 9 1:

ReliaStar Life Insurance Company
8947 Innovation Way
Chicago IL, 60682-0089

ReliaStar Life Insurance Company
ING Customer Service Center
PO Box 5044
Minot, ND 58702-5044

**LATE PAYMENT REMINDER NOTICE**
**Owner Primary Copy**

March 27, 2014

| Due Date | Annual Premium Due |
|----------|--------------------|
| 03/26/2014 | $97,714.80 |
| **Total Due** | $97,714.80 |

000182
GMS FLORIDA WESTCOAST INC.
C/O C/O Kimberly Thornton
15320 Amberly Dr Ste A
Tampa FL 33647-1647

RE: Policy # AD20140138 on Walter W Lane

Your policy needs immediate attention! Your insurance coverage is in danger of lapsing as your required premium is past due.

To keep your policy in good standing ReliaStar Life Insurance Company must receive your premium by 05/01/2014. We have enclosed an envelope for your convenience in remitting this payment. The minimum amount needed to bring the policy to the next policy billing period would be $97714.80.

**Important Notice:** Your grace period expires on 05/01/2014. If the payment is not received by the end of the applicable grace period, the coverage may lapse, depending on the terms of your policy. If coverage lapses, the policy and all payments thereon will become forfeited and void, except as to the right, if any, to a surrender value, paid-up policy, or extended term insurance, as provided in your policy. Please refer to your policy for additional information regarding coverage, lapse, grace period and policy provisions.

The Company does not accept premium payments or loan repayments using money orders for amounts over $5,000 and may reject payments made by Cashier's Checks, Bank Drafts, and Treasurer's Checks.

Premiums paid more frequently than annually result in higher total annual premiums for the same coverage, which is described in more detail in the policy.

Thank you.

Questions? Call: 800-654-5375. Keep this section for your records. Please return the section below with payment.

CC: FLORIDA FINANCIAL GROUP LLC

20007 5/12/2006

ReliaStar Life Insurance Company
GMS FLORIDA WESTCOAST INC.
C/O C/O Kimberly Thornton
15320 Amberly Dr Ste A
Tampa, FL 33647-1647

Late Payment Reminder Notice
Total Due   : $97,714.80
Due Date   : 03/26/2014

RE: Policy # AD20140138 on Walter W Lane

Please include the policy number on your check and make it payable to ReliaStar Life Insurance Company.

☐ If your address has changed, please check this box and complete the form on the back of this coupon.

1247474747471114393738413738404520140326000000097714802

Please include correct address and sign

ReliaStar Life Insurance Company
Customer Service
PO Box 5044
Minot, ND 58702-5044

May 1, 2015

000064
GMS FLORIDA WESTCOAST INC.
C/O C/O Kimberly Thornton
15320 Amberly Dr Ste A
Tampa FL 33647-1647

Re: Policy #: AD20140138
    Owner:  GMS Florida Westcoast Inc.           Insured: Walter W Lane

Dear Policyowner:

### NOTICE OF LAPSE OF INSURANCE COVERAGE

We have not received the necessary premiums that are required to keep the policy listed above active. Because no payment has been received, the policy has lapsed without value effective May 1, 2015 and the valuable coverage it provided has terminated.

Your Policy does have options for reinstatement. Please refer to your copy of the policy contract regarding the terms for reinstatement, then contact your agent or the Customer Service during our business hours of Monday - Friday, 8:00 a.m. to 6:00 p.m. CST .

Sincerely,

Voya Life Policyowner Services

cc:    FLORIDA FINANCIAL GROUP LLC

Questions?  Call: 800-654-5375
             Fax: 877-788-6305

